**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-------------------------------------------------------------------------------x
KARIM ARZADI, JOWORISAK & ASSOCIATES, LLC,
f/k/a ARZADI, JOWORISAK & ASSOCIATES and LAW
OFFICES OF KARIM ARZADI,

                                         Civil Action No.
                                         2:17-cv-05470

                           Plaintiffs,

          -against-

EVANSTON INSURANCE COMPANY, and ABC
INSURANCE COMPANY, 1-10,

                          Defendants.
-------------------------------------------------------------------------------x

---

### BRIEF IN SUPPORT OF EVANSTON INSURANCE COMPANY'S
### MOTION TO REOPEN THIS CASE TO COMPEL PLAINTIFFS' COMPLIANCE
### WITH THIS COURT'S FEBRUARY 7, 2018 ORDER

---

KENNEDYS CMK LLP
Michael J. Tricarico
Christina R. Salem
570 Lexington Avenue – 8th Floor
New York, New York 10022
(646) 625-4000
(212) 252-0444
*Attorneys for Defendant*
*Evanston Insurance Company*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ii

I.  PRELIMINARY STATEMENT ..........................................................................1

II.  STATEMENT OF FACTS ...................................................................................3

   A.  The Allstate Suit and The Order Ruling On the Duty to Defend. .................3

   B.  The Policy's Cooperation Requirements..........................................................5

   C.  The Plaintiffs' Extensive History of Failing to Cooperate With Evanston ....6

     1.  Plaintiffs' Failure to Provide Defense Information and
       Submit to the EUO ...................................................................................6

     2.  Plaintiffs' Failure to Comply with This Court's Defense Ruling and
       Continued Lack of Cooperation ...............................................................9

III.  ARGUMENT ......................................................................................................13

   A.  The Plaintiffs Have Defied the Court's Order and Violated
     New Jersey Law..............................................................................................13

   B.  Evanston's Defense Obligation Can Only Be Triggered Upon Plaintiffs'
     Cooperation and Submission of Legal Invoices Compliant with
     New Jersey Law..............................................................................................16

   C.  Plaintiffs' Failure to Cooperate Underscores The Necessity of the
     Requested EUO...............................................................................................18

IV.  CONCLUSION..................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*2000 Clements Bridge, LLC v. OfficeMax N. Am., Inc.,*
  No. 11-0057, 2013 U.S. Dist. LEXIS 102444 (D.N.J. July 23, 2013) ................................... 16

*Catanese v. Vance,*
  No. 95-3862, 2000 U.S. Dist. Lexis 23030 (D.N.J. June 21, 2000) ................................ 15-16

*DiFrancisco v. Chubb Ins. Co.,*
  283 N.J. Super. 601 (App. Div. 1995) ............................................................. 18, 19

*Dougherty v. Hanover Ins. Co.,*
  114 N.J. Super 483 (Law Div. 1971) ............................................................... 14-15

*Ebert v. Balter,*
  83 N.J. Super. 545 ...................................................................................... 16

*Federal Ins. Co. v. Levy,*
  2011 U.S. Dist. Lexis 105617 at *6-7 (D.N.J. Sept. 6, 2011) ................................... 19

*Griggs v. Bertram,*
  88 N.J. 347, 443 A.2d 163 (1982) ................................................................... 19

*Hager v. Gonsalves,*
  398 N.J. Super. 529 (2008) ........................................................................... 15

*Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.,*
  No. 09-1724, 2011 U.S. Dist. LEXIS 65018 (D.N.J. June 7, 2011) ....................... 17

*In re Envtl. Ins. Declaratory Judgment Actions,*
  259 N.J. Super. 308 (Super. Ct. App. Div. 1992) ..................................... 18

*Kolesar v. Home Depot,*
  No. 07-560, 2008 U.S. Dist. Lexis 130046, fn. 5 (D.N.J. July 7, 2008) ................. 15

*Levy v. Chubb Ins.,*
  240 A.D.2d 336, 659 N.Y.S.2d 266 (App. Div. 1997) ............................................. 19

*Merchants Indem. Corp. v. Eggleston,*
  179 A.2d 505 (N.J. 1962) ............................................................................. 14

M̲id-Monmouth Realty Assocs. v. Metallurgical Indus., No. A-0237-14T2,
  2017 N.J. Super. Unpub. LEXIS 993 (Super. Ct. App. Div. Apr. 21, 2017) ................... 16

*Nazario v. Lobster House, Nos. A-3025-07T1, A-3043-07T1,*
  2009 N.J. Super. Unpub. Lexis 1069 (App. Div. Mar. 4, 2009) ........................... 14

*New Jersey Full Ins. Underwriting Ass'n v. Jallah,*
    256 N.J. Super. 134 (App. Div. 1992) ...................................................................... 19

*Petersen v. New Jersey Mfrs. Ins. Co., No. A-0459-12T4,*
    2014 N.J. Super. Unpub. Lexis 995 (N.J. Super. Ct. App. Div. May 2, 2014) ....................... 14

*Prudential Property & Cas. Ins. Co. v. Nardone,*
    332 N.J. Super. 126 (Law Div. 2000) ................................................................ 15, 17

*Rendine v. Pantzer,*
    141 N.J. 292 (1995) ........................................................................................ 16

*Rutgers Cas. Ins. Co. v. Vassas,*
    139 N.J. 163 (1995) ........................................................................................ 15

*SL Indus., Inc. v. Am. Motorists Ins. Co.,*
    128 N.J. 188 (1992) ........................................................................................ 13

*Tangible Value, LLC v. Town Sports Int'l Holdings, Inc., No. 10-1453-MAS-TJB,*
    2014 U.S. Dist. LEXIS 162065 (D.N.J. Nov. 17, 2014) ................................................. 16-17

## I.   PRELIMINARY STATEMENT

Defendant Evanston Insurance Company ("Evanston") respectfully submits this Motion to Reopen this case for the limited purpose of compelling Plaintiffs Karim Arzadi ("Arzadi"), Joworisak &Associates, LLC, f/k/a Arzadi, Joworisak & Associates and Law Offices of Karim Arzadi (collectively the "Plaintiffs") to comply with this Court's February 7, 2018 Order and cooperate with Evanston in the handling of their defense in the relevant underlying lawsuit. Evanston, in support of its motion, states as follows:

At the heart of this motion is the Plaintiffs' outright refusal to honor their basic contractual obligations to cooperate with their professional liability insurer, Evanston. In its February 7, 2018 Order (the "Order") (*See* Exhibit A to the annexed Certification of Christina R. Salem, hereinafter "Salem Cert., Ex."), this Court granted Plaintiffs' Motion for Partial Summary Judgment on the limited issue of whether Evanston has a duty to defend the Plaintiffs in the underlying matter styled *All State New Jersey Insurance Company, et al. v. Anhuar Bandy, et al.*, Case No. OCN L 00019-17, filed in the Superior Court of the State of New Jersey, Ocean County (the "Allstate Suit"). The Allstate Suit alleges that the Plaintiffs engaged in a fraudulent kickback scheme to defraud various entities and insurance companies to obtain professional referrals and fraudulently procured insurance proceeds.

Since the entry of the Order, Plaintiffs' conduct required Evanston to go to great lengths and incur significant expenses in an effort to obtain Plaintiffs' compliance with the Order's directive that Evanston assume the defense of the Plaintiffs in the Allstate Suit.  Plaintiffs, for over eighteen (18) months, have, at every step, undermined Evanston's efforts, and stubbornly ignored this Court's edict.  Despite the Order's directive and Evanston's clear policy terms, Plaintiffs have willfully and intentionally sought to thwart Evanston's efforts to fully understand

the nature of the Allstate Suit's claims and properly defend against them.

Specifically, Plaintiffs have: (1) ignored Evanston's multiple written offers to assume their defense; (2) communicated that they will neither accept nor reject Evanston's defense offering; (3) refused to provide Evanston with defense bills in a format that complies with relevant New Jersey law; (4) provided Evanston with only piecemeal updates in the Allstate Suit for the sole purpose of strong-arming Evanston into potentially funding settlements in that matter; and (5) shielded relevant information from Evanston, in further disregard of their contractual obligations by repeatedly refusing to submit to an examination under oath ("EUO"), despite it being previously ordered by this Court and required under the Evanston policy and New Jersey law.

Evanston has suffered significant prejudice because of the Plaintiffs' refusal to honor this Court's ruling on Evanston's duty to defend and their failure to otherwise comply with their contractual obligations to cooperate with Evanston. An insurer, like Evanston, has the absolute right to conduct a thorough investigation of a claim, here the Allstate Suit, and, as the Evanston policy provides, and this Court has held, assume a claimant's defense where it is triggered. These actions can only be properly undertaken with the cooperation of the insured.

The purpose of a policy's cooperation clause is to enable insurers to properly investigate the underlying claim while the information is still fresh and allow the insurer to mount all available and appropriate defenses to the claims made against its insured. As New Jersey law instructs, before an insurer can assume that defense, the insured must communicate whether it is accepting or rejecting the insurer's defense offering. Plaintiffs have repeatedly refused to answer even that most basic and fundamental question. They have simultaneously declined to cooperate with Evanston's investigation surrounding the claims in the Allstate Suit and refused to submit to even an initial EUO as required under the Evanston policy.

2

Thus, Evanston respectfully submits that this Court should reopen this matter for the purpose of compelling Plaintiffs' compliance with the Order's defense directives and require the Plaintiffs to begin cooperating with Evanston so that it can properly defend and investigate the Allstate Suit. This would of course, include an Order that the Plaintiffs submit to an EUO, so that basic questions as to the nature of the claims against them can finally be answered.

## II.     STATEMENT OF FACTS

### A.     The Allstate Suit and The Order Ruling On the Duty to Defend

Evanston's knowledge about the Allstate Suit presented in this motion has been ascertained solely by its review of the Allstate Suit's pleadings as Plaintiffs, despite seeking payments under the Policy, have failed to cooperate with Evanston by, among other things, refusing to provide defense counsel reports or timely status updates. According to the Allstate Suit Complaint (Salem Cert., Ex. B), on or about January 3, 2017, various Allstate insurance entities, the Commissioner of the New Jersey Department of Banking & Insurance and the State of New Jersey filed the Allstate Suit. The Allstate Suit names as defendants approximately seventy-five chiropractic clinics, chiropractors, law firms, lawyers and other individuals, and concerns the defendants' alleged large-scale automobile injury insurance fraud network scheme.

In the Allstate Suit, Plaintiffs are alleged to have knowingly participated in a kickback scheme to obtain referrals of personal injury clients and defraud insurance companies in violation of the New Jersey Insurance Fraud Prevention Act and the New Jersey Rules of Professional Conduct. By employing and paying runners, Plaintiffs allegedly obtained referrals of personal injury clients, and then used police reports to identify individuals involved in motor vehicle accidents, contacting them directly to solicit their treatment at one of the chiropractic facilities controlled by the Plaintiffs' co-conspirators and/or to retain the Plaintiffs to represent them in

making bodily injury claims. This scheme also allegedly involved the preparation of false or misleading medical bills, records, and/or reports submitted to the Allstate insurance entities.

Evanston disclaimed coverage to the Plaintiffs for the Allstate Suit under Policy No. LA808257, effective May 23, 2016 to May 23, 2017 (the "Policy") (Salem Cert., Ex. C). The Allstate Suit's allegations provided multiple grounds for Evanston to disclaim coverage, based on the inability of the Plaintiffs to trigger coverage under the insuring agreement and on the application of two broad exclusions. The insuring agreement covers sums in excess of the deductible which the Insured becomes legally obligated to pay as Damages by reason of a Wrongful Act arising out of Professional Legal Services provided that prior to the policy inception no Insured has knowledge of a "Wrongful Act * * * or any fact, circumstance, situation or incident which would lead a reasonable person in that Insured's position to conclude that a Claim was likely." *Id*. The Policy excludes from the definition of Damages *inter alia* matters which are uninsurable as a matter of law, the return, withdrawal, reduction, or restitution of fees, and any punitive or exemplary damages. *Id*. The definition of Wrongful Act is limited to "any act, error or omission *** in rendering or failing to render Professional Legal Services for others. *Id*. Professional Legal Services is limited to services rendered by an Insured as a lawyer and other limited services connected with and incidental to the Insured's profession as a lawyer.

Evanston's disclaimer was based on the insuring agreement's scope of Damages, Wrongful Acts and Professional Legal Services, the insureds' prior knowledge of likely claim circumstances, Exclusion A for claims based upon or arising out of the division of any fees, and Exclusion F for dishonest conduct. *Id*. After this suit was filed to determine coverage rights under the Policy, and following cross-motions brought by Evanston and the Plaintiffs, the Court issued the Order and granted partial summary judgment to the Plaintiffs, holding that Evanston has a

duty to defend the Plaintiffs in the Allstate Suit under the Policy (Salem Cert., Ex. A). The Court ruled it was premature to make a determination of whether Evanston must indemnify the Plaintiffs under the Policy. On April 10, 2018, this Court denied Evanston's request for reconsideration of the Order's ruling (Salem Cert., Ex. D).

**B.**   **The Policy's Cooperation Requirements**

The Policy contains several terms and conditions outlining an insured's duty to cooperate with Evanston, including the obligation to submit to an EUO (Salem Cert., Ex. E):

*      *      *

> C. **Assistance and Cooperation of the Insured:** The Insured shall cooperate with the Company and upon the Company's request, the Insured shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without cost to the Company other than expense reimbursement provided under Section Supplementary Payments. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have.

*      *      *

Where Evanston's defense obligation under the Policy is triggered, the insured and its defense counsel are required to further cooperate as follows:

*      *      *

> 1. The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:
>
> (a) Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the Limits of Liability stated in Item 4. of the Declarations. Such Claim Expenses

5

shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the Limits of Liability as stated in Item 4. of the Declarations have been tendered to the Insured or into the court or exhausted by payment(s) of Damages and/or Claim Expenses.

(b) The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile (as stated in Item 2. of the Declarations) allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

(i) providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

(ii) providing any other reasonable information requested and fully itemized billing on a periodic basis;

(iii) cooperating with the Company and the Insured in resolving any discrepancies;

and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the Limits of Liability as stated in Item 4. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

*       *       *

**C.    The Plaintiffs' Extensive History of Failing to Cooperate With Evanston**

**1.    Plaintiffs' Failure to Provide Defense Information and Submit to the EUO**

Within two (2) days of the Court's denial of Evanston's Motion to Reconsider, on April 12, 2018, Evanston promptly sought information from the Plaintiffs to prepare for the assumption of Plaintiffs' defense in the Allstate Suit (Salem Cert., Ex. F).  Evanston requested: (1) the names,

6

rates, resumes and past defense trial experience (including insurance defense matters) for all attorneys involved in handling the Plaintiffs' defense; (2) a proposed budget for the entire span of the Allstate Suit; (3) the total amount of past fees incurred; (4) an overview of past settlement discussions and settlement ranges demanded and/or offered; (5) the status of the Allstate Suit, including depositions that had taken place and/or scheduled to be conducted; (6) a copy of the Allstate Suite's Scheduling Order and other filings; and (7) a litigation plan.

Since Plaintiffs had already represented to Evanston and this Court that Arzadi would abide by his obligations under the policy, and submit to his EUO, Evanston, also on April 12, 2018, reiterated that it was awaiting, per its agreement with Plaintiffs, proposed dates for Arzadi's EUO availability. *Id*. On April 26, 2018, Evanston followed up with Plaintiffs to schedule the EUO, advising that completing it prior to the then scheduled May 16, 2018 conference with this Court would assist Evanston in determining whether additional discovery may be necessary, including Arzadi's formal deposition in this matter.  *Id.*. In response, Plaintiffs did not object to any of the requests made by Evanston and in fact advised that Evanston's proposed May 11, 2018 date for the EUO was "no good" for Plaintiffs' counsel. *Id*.  Despite Evanston's repeated follow-ups from its initial April 12, 2018 request to Plaintiffs, six weeks passed with no substantive response from Plaintiffs, either on Evanston's requested defense handling information or the scheduling of the promised EUO.

In the midst of Evanston's good faith pursuit of Plaintiffs' defense information, this Court conducted a conference on May 16, 2018, at which time, the Court directed that: (1) Arzadi's EUO is to be conducted on or before June 6, 2018; (2) the Plaintiffs must provide all defense counsel information that Evanston requested from Plaintiffs on or before May 18, 2018; and (3) a

follow up court conference would be held on June 6, 2018 to ensure that these Court directives have been complied with. (Salem Cert., ¶ 8 and Ex. G).

After nearly six (6) weeks and Evanston's six (6) follow up requests for information, on May 22, 2018, Plaintiffs provided only the names of its defense counsel and a meager paragraph briefly touching upon the defense counsel's past experience. (Salem Cert., Ex. F). Plaintiffs provided Evanston with none of the other requested information. In fact, rather than cooperate with Evanston by providing the necessary defense handling information, Plaintiffs did the exact opposite. On the very same day that Plaintiffs provided Evanston with their meager response, Plaintiffs filed a Motion for a Protective Order, seeking to withhold information from Evanston, including to prevent the EUO that Arzadi had previously agreed to, and which Evanston was relying upon to assist in its investigation. (Salem Cert., Ex. H).

After filing their motion, Plaintiffs, on May 23, 2018, supplemented their prior incomplete defense information with a basic litigation plan, an incomplete set of its defense counsels' invoices and counsel CV's. (Salem Cert., Ex. I). On that same day, Evanston advised Plaintiffs that its production was insufficient. (Salem Cert., Ex. J). Plaintiffs' minimal information provided on May 22, 2018 and May 23, 2018 was in direct violation of the Court's May 16, 2018 directives.

The Court held numerous conferences with the parties regarding Plaintiffs' motion and, in an effort to avoid expenditure of fees to litigate it, ultimately requested that Plaintiffs agree that Arzadi submit to the EUO. (Salem Cert., ¶ 12). Plaintiffs sent a letter to Evanston on June 1, 2018 stating that Arzadi is "willing to agree to an EUO, on certain conditions." (Salem Cert., Ex. K). While the only conditions the Policy attaches to the EUO is that the insured cooperate with Evanston and submit to the EUO "upon the Company's [Evanston's] request," the Plaintiffs'

conditional EUO offer was contingent on the EUO not occurring until after Arzadi's deposition in the Allstate Suit takes place, and when it does occur, a protective order would need to be in place.

At a subsequent conference, this Court requested that the parties consider a proposal to expedite the taking of Arzadi's EUO. (Salem Cert., ¶ 13) This Court directed the parties to consider agreeing to conduct Arzadi's EUO if his deposition in the Allstate Suit did not occur within six months of that conference date. While the parties were considering this proposal, and before Evanston's time to submit its opposition to Plaintiffs' Motion to Preclude, on June 11, 2018, this Court administratively terminated this suit pending disposition of the Allstate Suit, without prejudice to the right of the parties to re-open it. (Salem Cert., Ex. L).

### 2. Plaintiffs' Failure to Comply with This Court's Defense Ruling and Continued Lack of Cooperation

In a July 9, 2018 letter, Evanston sought to assume the Plaintiffs defense in the Allstate Suit, as the Order directs. (Salem Cert., Ex. M). As New Jersey law allows, Evanston advised the Plaintiffs that it will defend them in the Allstate Suit, subject to a complete reservation of all Evanston's rights, including the right to ultimately disclaim any indemnity obligation under the Policy for that matter to the extent certain Policy defenses applied. *See id*. at 8, 9. Most importantly, as Evanston is also required to under New Jersey law, it advised the Plaintiffs of their right to either accept or reject the defense offering, given that Evanston's defense of the Plaintiffs was being provided under a reservation of rights. *Id*. at 9. Evanston requested that the Plaintiffs communicate their response within fourteen (14) business days, so that arrangements could be made for the handling of Plaintiffs defense from that point forward.

Also in its July 2018 letter, Evanston made a good faith offer to reimburse the Plaintiffs' reasonable past fees incurred in defending the Allstate Suit. Evanston advised Plaintiffs that it was in the process of reviewing the billing invoices they submitted to Evanston for the four proposed

attorneys and two different law firms that they had already selected to defend them in the Allstate Suit. *See id*. at 8.  This review was hampered, however, by the Plaintiffs' submission of invoices in a format that does not comply with relevant New Jersey law.  This deficiency has to date not been corrected.

Also, Evanston's July 9, 2018 letter directed the Plaintiffs to the Policy's cooperation terms which require that Arzadi submit to EUO upon Evanston's request. *See id*. at 6.  The letter reminded Plaintiffs of the progression of events for the EUO including: (1) Plaintiffs prior agreement for Arzadi to sit for the EUO and this Court's directive that it take place on or before June 6, 2018; (2) Evanston's reliance on this agreement as the reason it did not proceed with Arzadi's deposition in this litigation at a prior time; (3) Arzadi's further conditional agreement to submit to the EUO; (4) this Court's subsequent directive that the parties consider agreeing to conduct the EUO if Arzadi's deposition in the Allstate Suit did not proceed within six (6) months; and (5) that in addition to the failure to submit to the EUO, Plaintiffs refused to cooperate with Evanston including, as required under the policy, failing to "give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim."

In a July 30, 2018 response letter, Plaintiffs took the unsupportable position that Evanston was not entitled to offer its defense under a reservation of rights, wrongly contending that Evanston waived its rights to assert its coverage defenses. (Salem Cert., Ex. N). Plaintiffs then advised Evanston that they "neither accept nor reject the ROR, nor does the Insured have any obligation to do so."

Evanston responded to the Plaintiffs in a September 7, 2018 letter in which it set forth well-settled New Jersey law that an insurer is well within its right to provide a defense to an

insured, while simultaneously reserving its right as to any ultimate indemnification obligation under the Policy. (Salem Cert., Ex. O). Evanston reiterated its request that Plaintiffs advise whether they were accepting or rejecting Evanston's defense offer, or instead electing their own independent counsel to defend them in the Allstate Suit (which would be subject to Evanston's approval).

Evanston's September 7, 2018 letter also reminded Plaintiffs that Arzadi had still failed to fulfill his obligation to submit to EUO, and further outlined Evanston's repeated dealings with Plaintiffs on the EUO and its requested defense information:

> As early as April 2018, the parties agreed that Mr. Arzadi's EUO should be completed prior to a court conference that was scheduled to take place on May 16, 2018. In an April 12, 2018 confirming email, wherein Evanston also outlined the defense handling information that Plaintiffs were to provide, Evanston requested proposed dates for Mr. Arzadi's EUO. This request was repeated in an April 26, 2018 follow up email when Evanston again reiterated that, per the agreement of the parties, the EUO should be completed prior to the May 16, 2018 court conference in order to assist Evanston in determining whether additional discovery may be necessary, including Mr. Arzadi's formal deposition in this matter. You raised no objection to the agreed upon EUO, and instead simply responded that "May 11 is no good for me, because [I] have a motion that day in criminal court."
>
> To accommodate your schedule, Evanston proposed alternative dates for the EUO – May 9, 10 or 15, 2018. At no time leading up to these communications did you object to the EUO or attempt to dispute the parties' prior agreement to take it. Instead, to side-step Mr. Arzadi's obligation to cooperate under the policy, on May 2, 2018, you advised that your priority at that time was to get "squared away" the long-overdue defense handling information Plaintiffs were obligated to provide Evanston. On that same day, Evanston reiterated the Policy's cooperation provision and Mr. Arzadi's obligation to, upon Evanston's request, sit for the EUO.

Id.

Plaintiffs never responded to Evanston's letter.  In an email dated January 23, 2019, Evanston again reminded the Plaintiffs of their continued breach of their cooperation obligations

under the Policy.  (Salem Cert., Ex. P). Over six (6) months had now passed since the Court's

original June 6, 2018 deadline to complete the EUO and the Plaintiffs still refused to appear for it.

Evanston's email also highlighted Plaintiffs' other failures to cooperate, including their refusal to

accept or reject Evanston's defense offering, and that Plaintiffs had neither provided nor even

advised Evanston of the discovery exchanged in the Allstate Suit.

In a February 14, 2019 email, despite Evanston having been deprived of its right to handle

the defense of the Allstate Suit, it attempted again in good faith to pay Plaintiffs' previously

incurred legal fees. (Salem Cert., Ex. Q).  Evanston reiterated its request that the Plaintiffs submit

compliant legal bills that remedied the clear deficiencies appearing in its prior submission such as

improper duplicative work, non-descript entries, administrative tasks billed at attorney rates, and

fees for two separate law firms and four different attorneys. These deficiencies were all also

previously highlighted to the Plaintiffs in Evanston's September 7, 2018 letter.  Despite repeated

promises to do so, Plaintiffs never submitted revised legal bills.

Most recently, in an October 16, 2019 email, Evanston reiterated its request to conduct

Arzadi's EUO, now approximately a year and a half after the parties first agreed that it would take

place. (Salem Cert., Ex. R).  Since almost two years had passed since the Order's defense ruling

was issued, Evanston emphasized the prejudice it has suffered as a result of Plaintiffs' failure to

cooperate, including their refusal to accept or reject Evanston's defense offering. *Id*.  Evanston's

email also reminded Plaintiffs that over a year had passed since Evanston informed them of the

glaring deficiencies in the previous defense bill submission and Plaintiffs had yet to submit the

promised revised bills that would purportedly remedy those deficiencies. *Id*.

As of this date, Plaintiffs have yet to advise Evanston as to whether they are accepting or

rejecting Evanston's defense offering. (Salem Cert., ¶ 20).  Plaintiffs have also refused to involve

Evanston in any meaningful manner in the handling of the defense of the Allstate Suit, while providing very little information regarding that suit's developments. (Salem Cert. Exs. F, P, Q, R). Further, Plaintiffs have failed to provide Evanston with legal bills that are compliant with New Jersey law and have continued to refuse to submit to EUO. *Id*. All of these acts and omissions are contrary to this Court's ruling on the defense of the Allstate claim.

### III.    ARGUMENT

#### A.    The Plaintiffs Have Defied the Court's Order and Violated New Jersey Law

Under New Jersey law, "[T]he insurer has the exclusive right under the policy to control the claim and to effectively deter the insured from taking any action that will interfere with the insurer's right to control the matter." *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 128 N.J. 188, 200 (1992). Furthermore, "[t]he insurer's duty to defend corresponds to the insured's duty to relinquish control of the defense, and one cannot arise without the other." *Id*.

An insurer is well within its rights to provide a defense to an insured, while simultaneously reserving its rights with respect to any ultimate indemnification obligation under the policy.  This is true even where the insurer initially disclaimed coverage for a claim but was later found to have a defense obligation.  *First Trenton Indem. Co. v. River Imaging, P.A.*, No. A-6191-06T3, 2009 N.J. Super. Unpub. LEXIS 2190, at *27 (Super. Ct. App. Div. Aug. 11, 2009) ("[a]n insurer that fails to provide a defense for an action asserting both covered and uncovered claims is nevertheless entitled to a determination of whether any judgment entered against its insured was for a covered claim and thus fell within the insurer's obligation to pay…This is so even if the insurer's refusal to defend was wrongful.").

Where an insurer seeks to assume its insured's defense, while simultaneously reserving the right to deny indemnity coverage, the insurer can only do so with the insured's consent.

*Merchants Indem. Corp. v. Eggleston*, 179 A.2d 505, 512 (N.J. 1962).  Namely, in the insurer's reservation of rights letter, the insurer "must fairly inform the insured that the offer may be accepted or rejected."  *Nazario v. Lobster House*, Nos. A-3025-07T1, A-3043-07T1, 2009 N.J. Super. Unpub. Lexis 1069, *12 (App. Div. Mar. 4, 2009).  The insured is then correspondingly obligated to communicate to the insurer whether it is accepting or rejecting the insurer's defense offering.  *Petersen v. New Jersey Mfrs. Ins. Co.*, No. A-0459-12T4, 2014 N.J. Super. Unpub. Lexis 995, *14-15 (N.J. Super. Ct. App. Div. May 2, 2014).

Once the Court ruled that Evanston was obligated to assume the Plaintiffs' defense in the Allstate Suit, Evanston immediately took steps to fulfill that obligation in accordance with its rights under the Policy. On multiple occasions, Evanston made its defense offering to the Plaintiffs and did so under a reservation of rights, as New Jersey law allows. As is also required under New Jersey law, Evanston requested that the Plaintiffs communicate whether they would accept or reject Evanston's defense offering. Plaintiffs have refused to answer that most fundamental inquiry, instead initially conveying they are neither accepting nor rejecting Evanston's offering, and then, after numerous follow ups by Evanston for an answer, provided no response at all.

The cooperation requirement has "dual aspects" – the insurer must seek its insured's reasonable cooperation and the insured must provide it.  *Dougherty v. Hanover Ins. Co.*, 114 N.J. Super 483, 488 (Law Div. 1971).  If the insurer is obligated to assume an insured's defense, the duty to cooperate continues throughout the course of the underlying litigation. *Rutgers Cas. Ins. Co. v. Vassas*, 139 N.J. 163, 169 (1995); *Prudential Property & Cas. Ins. Co. v. Nardone*, 332 N.J. Super. 126, 138 (Law Div. 2000) (insured obligated to provide insurer with discovery). Evanston has been significantly prejudiced by Plaintiffs' lack of compliance with this Court's

14

Order and Evanston's right to assume the defense of the Allstate Suit.  Plaintiffs, while willfully blocking Evanston from assuming its defense right, have only provided it with piecemeal updates on the status of the Allstate Suit, and then only for the purpose of seeking Evanston's funding of potential settlements in that matter.

Ultimately, the Plaintiffs will likely seek indemnity coverage for any judgment issued or settlement that is agreed upon in the Allstate Suit.  When that time comes, Evanston will have been kept uninformed as to the circumstances of either the judgment or settlement in that action. Plaintiffs cannot have their cake and eat it too – i.e., bar Evanston's right to defend and be apprised of the Allstate Suit's developments, while also seeking to recoup Policy payments. Where the insurer is obligated to defend an insured, the duty to cooperate "remains in effect," even after an insured files a coverage lawsuit, like the instant one, against its insurer.  *Kolesar v. Home Depot*, No. 07-560, 2008 U.S. Dist. Lexis 130046, fn. 5 (D.N.J. July 7, 2008).  Appreciable prejudice to Evanston is presumed as a matter of law because Evanston will have been prevented from gathering or asserting facts relevant to liability.  *Hager v. Gonsalves*, 398 N.J. Super. 529, 534-35 (2008).  Plaintiffs' defiant acts go far beyond mere refusal to cooperate. Rather, they have unfairly impacted and prejudiced Evanston's defense handling rights under the Policy and impeded its ability to properly investigate and defend the Allstate Suit claim. *Catanese v. Vance*, No. 95-3862, 2000 U.S. Dist. Lexis 23030, *13-24 (D.N.J. June 21, 2000) (insurer prejudiced due to insured's lack of cooperation where insured failed to allow insurer to participate meaningfully in legal proceedings that may result in its payment of the claim).

For these reasons, Evanston respectfully submits that the Court reopen this matter and compel the Plaintiffs to comply with the Order, communicate to Evanston if they will accept or reject Evanston's defense offering, and cooperate with Evanston in providing all information in

the Allstate Suit.

**B.** **Evanston's Defense Obligation Can Only Be Triggered Upon Plaintiffs' Cooperation and Submission of Legal Invoices Compliant with New Jersey Law**

As set forth above, Plaintiffs have intentionally and repeatedly barred Evanston from any participation in their defense. Plaintiffs have also failed to cooperate with Evanston and refused to provide Evanston with defense fee invoices which comply with New Jersey law.

In New Jersey, an insurer is obligated to fund only those reasonable and necessary costs incurred in the defense of an insured. *Ebert v. Balter*, 83 N.J. Super. 545, 561 (Cnty. Ct. 1964). Reasonable and necessary defense fees do not encompass fees that are a result of duplicative work, excessive billing, are supported by non-descript entries, or those incurred by multiple law firms. *See Rendine v. Pantzer*, 141 N.J. 292, 335 (1995) (fee awards "should exclude hours that are not reasonably expended. Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary."); *Mid-Monmouth Realty Assocs. v. Metallurgical Indus.*, No. A-0237-14T2, 2017 N.J. Super. Unpub. LEXIS 993, at *67 (Super. Ct. App. Div. Apr. 21, 2017) (inadequately detailed and excessive charges are not recoverable); *2000 Clements Bridge, LLC v. OfficeMax N. Am., Inc.*, No. 11-0057, 2013 U.S. Dist. LEXIS 102444, at *27 (D.N.J. July 23, 2013) (reducing fees because "administrative tasks should not be billed at partner rates."); *Tangible Value, LLC v. Town Sports Int'l Holdings, Inc.*, No. 10-1453-MAS-TJB, 2014 U.S. Dist. LEXIS 162065, at *33 (D.N.J. Nov. 17, 2014) (finding fees billed by multiple attorneys for the same task was unreasonable and properly reduced); *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, No. 09-1724, 2011 U.S. Dist. LEXIS 65018, at *24 (D.N.J. June 7, 2011) (fees are unreasonable where two law firms defended the insured).

The defense fees that Plaintiffs initially submitted to Evanston are deficient, and not reimbursable as presented to Evanston. They are replete with duplicative work, non-descript

entries, administrative tasks billed at attorney rates and, most significantly, include fees for two separate law firms and four different attorneys without explanation of the necessity for multiple firms and attorneys seemingly doing the same work. Under such circumstances, New Jersey law permits Evanston to simply reimburse a reduced amount that complies with New Jersey billing standards. However, in an effort to achieve an amicable resolution of reimbursable past costs, Evanston offered Plaintiffs the opportunity to re-submit those invoices for reconsideration in a form that remedies such deficiencies. Evanston first identified these issues in an email dated May 23, 2018, over eighteen (18) months ago.

Despite Evanston's repeated attempts at receiving revised invoices that comply with New Jersey law, and Plaintiffs reassurances that they intend to do so, the Plaintiffs have yet to resubmit any invoices remedying the deficient billing entries. Evanston has been forced to incur legal bills in its repeated follow up attempts at securing Plaintiffs' cooperation, while Plaintiffs have completely flouted their duties under the Policy.  It is a fundamental principle of contract law that one party cannot claim breach when that party itself has failed to perform under the contract. *Prudential Property and Cas. Ins. Co. of New Jersey v. Nardone*, 332 N.J. Super. 126, 139 (Law Div. 2000) (holding that "one may not invoke the judicial process seeking affirmative relief and at the same time flout the duties imposed by that process to avoid development of proof having a bearing upon his or her right to such relief.").  New Jersey courts have considered an insured's failures to produce appropriate records as constituting a willful refusal to comply with the terms of an insurance contract.  *DiFrancisco v. Chubb Ins. Co.*, 283 N.J. Super. 601, 609-12 (App. Div. 1995).

The Plaintiffs have failed to perform its required obligations under the Policy.  Evanston's rights have been materially diluted and prejudiced by the Plaintiffs' willful failure to cooperate

with Evanston, despite Evanston's repeated good faith efforts to attain that cooperation. Evanston respectfully submits that any defense and/or reimbursement obligation for past fees that Evanston may owe to the Plaintiffs begins only at the future point that Plaintiffs begin cooperating with Evanston – and no earlier – including the date by which Plaintiffs submit compliant legal bills for consideration. Evanston should have no obligation for past fees incurred by Plaintiffs during the period of Plaintiffs' lack of cooperation.

**C.** **Plaintiffs' Failure to Cooperate Underscores The Necessity of the Requested EUO**

An EUO is an investigative tool that an insurer may utilize to evaluate the facts and circumstances surrounding a claim, and its purpose is not simply to determine whether a defense is triggered, but also if the insurer's indemnity obligation will be called upon. *DiFrancisco v. Chubb Ins. Co.*, 283 N.J. Super. 601, 611 (App. Div. 1995) ("[t]he underlying purpose of an examination under oath clause requiring production of relevant documents is to allow the insurer to pursue its rights under the policy in order to determine whether the claim is legitimate and should be paid."); *In re Envtl. Ins. Declaratory Judgment Actions*, 259 N.J. Super. 308, 314 (Super. Ct. App. Div. 1992) (holding the general rule that insureds have a duty to cooperate with insurers pursuant to policy conditions where insurer is defending the insured or paying for the insured's defense in underlying claim or action).

The District of New Jersey has recognized that an insured's failure to submit to EUO is fatal to its claim:

> Indeed, the policy required [the insureds'] cooperation with [the insurer's] investigation and demands for an examination and sworn proof of loss … and compliance with such demands has been deemed a condition precedent to recovery. *See e.g.*, *Griggs v. Bertram*, 88 N.J. 347, 360, 443 A.2d 163 (1982); *DiFrancisco v. Chubb Ins. Co.*, 283 N.J. Super. 601, 613, 662 A.2d 1027 (App. Div. 1995); *Levy v. Chubb Ins.*, 240 A.D.2d 336, 659 N.Y.S.2d 266, 266 (App. Div. 1997) (finding that "willful failure of an insured to

18

> submit to an examination under oath and to supply all relevant
> material in compliance with the provisions of an insurance policy
> … constitute[s] a material breach of contract, and … preclude[s]
> recovery.").

*Federal Ins. Co. v. Levy*, 2011 U.S. Dist. Lexis 105617 at *6-7 (D.N.J. Sept. 6, 2011).

Under the Policy, the Plaintiffs are obligated to cooperate with Evanston, which would include presenting Arzadi for EUO as requested. *New Jersey Full Ins. Underwriting Ass'n v. Jallah*, 256 N.J. Super. 134, 141 (App. Div. 1992) (requiring that the insured submit to an examination under oath as part of complying with the cooperation clause). Over the course of several communications on the subject, Plaintiffs agreed to, and commenced scheduling, Arzadi's EUO. Furthermore, the Court recognized Evanston's good faith basis for seeking EUO, and issued a specific deadline to complete it – June 6, 2018. (Salem Cert., Ex. G).  Arzadi's continued refusal to submit to EUO is in direct violation of his obligations under the Policy and in deliberate disregard for the Court's directives.

Furthermore, not only has Evanston been deprived of an important contractually bargained-for right under the Policy – to defend and investigate the Allstate Suit claim – but Evanston has been appreciably prejudiced as a result. As mentioned in Evanston's July 9, 2018 letter (Salem Cert., Ex. M), the Plaintiffs initially agreed to complete Arzadi's EUO and even represented the same to the Court. Evanston, in reliance of this arrangement, elected to delay Arzadi's deposition in this coverage action since the EUO would likely render that deposition irrelevant. This coverage action has since been administratively terminated without prejudice, with the Plaintiffs' deceitful delay tactics serving to prevent Evanston from deposing Arzadi in the first instance, and now from being able to conduct his EUO.

Arzadi is the only insured individual with significant relevant knowledge concerning the Allstate Suit.  The Plaintiffs' lack of cooperation has prejudiced Evanston in its claims handling

by depriving Evanston access to a material witness. The Plaintiffs' repeated acts of non-cooperation underscores the need for the EUO to proceed.  Evanston is entitled to investigate this claim and conduct the EUO as requested.   Plaintiffs should not be entitled to withhold information from Evanston any longer and then later attempt to collect payments under the Policy.

As a result, Evanston respectfully requests that the Court reopen this matter and Order the EUO to proceed to mitigate any further prejudice to Evanston.

## IV.     CONCLUSION

For the reasons set forth herein, Evanston respectfully submits that its motion to reopen this matter be granted for the purpose of compelling Plaintiffs to comply with the Court's Order and cooperate with Evanston, including compelling Arzadi's EUO, in addition to such other and further relief this Court deems just and proper.

Dated: December 31, 2019

Respectfully submitted,

KENNEDYS CMK LLP

*s/ Christina R. Salem*
Michael J. Tricarico
Christina R. Salem
570 Lexington Avenue – 8th Floor
New York, New York 10022
(212) 252-0004
Email: michael.tricarico@kennedyslaw.com
        christina.salem @ kennedyslaw.com
*Attorneys for Defendant*
*Evanston Insurance Company*