Your Ref  Unknown
Our Ref   File No.: LA400691/01770-00010

**By Electronic and Certified Mail,
Return Receipt Requested**
Philip Nettl, Esq.
Joseph J. Benedict, Esq.
Benedict and Altman
247 Livingston Avenue
New Brunswick, New Jersey 08901

# Kennedys CMK

570 Lexington Avenue
8th Floor
New York
New York 10022
USA

T +1 212.252.0004
F +1 212.252.0444

www.kennedyslaw.com

646.625.3968

christina.salem@kennedyscmk.com

June 30, 2017

Re: *Allstate New Jersey Ins. Co., et al v. Bandy, et al.*
Docket No. L19-17, Superior Court of New Jersey,
Law Division, Ocean County
Policy No.:   LA808257
Insured:      Law Offices of Karim Arzadi

Dear Messrs. Nettl and Benedict:

As you know, this firm has been retained by Markel Service, Incorporated, the claims service manager for Evanston Insurance Company ("Evanston"), in connection with the above-referenced lawsuit (the "Allstate Suit" or the "Claim"). In this capacity, we write to provide Evanston's insurance coverage position under the above-referenced policy for the Claim. This letter follows up on, and incorporates by reference, all prior communications by Evanston in connection with this matter.[1]

We are directing this letter to you as the authorized representative of Karim Arzadi, Esq. ("Arzadi") and Joworisak & Associates, LLC f/k/a Arzadi, Joworisak & Associates ("Joworisak") (collectively, the "Insureds"). If you are not acting on behalf of this individual, or those entities with respect to insurance matters, please forward this correspondence to the appropriate parties and immediately advise us accordingly.

---

[1] As Evanston previously communicated to you, any perceived delay, there was none, in issuing this position letter resulted from the Insureds' delay in providing the voluminous relevant information to Evanston during its coverage investigation.

Kennedys Law LLP, a UK Limited Liability Partnership, is a partner of Kennedys CMK LLP.

*Kennedys offices, associations and cooperations:* Australia, Argentina, Belgium, Brazil, Chile, China, Colombia, Denmark, England and Wales, France, Hong Kong, India, Ireland, Italy, Mexico, New Zealand, Northern Ireland, Norway, Pakistan, Peru, Poland, Portugal, Russian Federation, Scotland, Singapore, Spain, Sweden, United Arab Emirates, United States of America.

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

**Kennedys CMK**

## I. THE ALLSTATE SUIT

On or about January 3, 2017, Allstate New Jersey Insurance Company, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Property and Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Encompass Insurance Company of New Jersey, Encompass Property and Casualty Company of New Jersey, and Richard J. Badolato, Commissioner of the New Jersey Department of Banking & Insurance (collectively, the "Allstate Plaintiffs") filed a Complaint (the "Complaint") in the Superior Court of New Jersey, Law Division Ocean County, Docket No. L19-17 (the "Allstate Suit"). The Allstate Suit names as Defendants approximately seventy-five chiropractic clinics, chiropractors, law firms, lawyers, and other individuals. In the Complaint, certain of the Defendants have been generally identified as the "Law Firm Defendants," including Arzadi and Joworisak (collectively, the "Arzadi Defendants").

The Allstate Suit concerns an alleged large-scale automobile injury insurance fraud network scheme. The Complaint alleges that Defendants Anhuar Bandy and Karim Bandy (collectively, the "Bandy Defendants") engaged in a series of fraudulent schemes that, through the use of runners and kickback agreements and relationships with lawyers, healthcare providers and others, facilitated the solicitation and recruitment of individuals, identified in the Allstate Suit as the Allstate Claimants, involved in automobile accidents. The Allstate Claimants are alleged to be individuals who submitted claims to Allstate Plaintiffs relating to alleged injuries caused by automobile accidents and are also alleged to have received healthcare services, testing and/or medical supplies from one or more of the Defendants pursuant to Personal Injury Protection ("PIP") coverage under a policy of insurance issued by the Allstate Plaintiffs.

The Complaint asserts that the Bandy Defendants engaged in the "Bandy Runner Scheme." Under that scheme, the Bandy Defendants allegedly paid what the Complaint classifies as the "Runner Defendants" to visit the homes of individuals involved in motor vehicle accidents, or use other means to solicit potential patients, and urge those individuals to undergo treatment at a chiropractic clinic controlled by the Bandy Defendants, and/or refer them to one of the Law Firm Defendants. The purpose of the alleged scheme was for the Allstate Claimants to make claims for PIP benefits and/or damages for bodily injury claims against automobile insurance policies issued by the Allstate Plaintiffs and/or other insurers.

The Complaint highlights specific instances of runners who were purportedly part of the alleged insurance fraud network, orchestrated by the Bandy Defendants, and who directed patients to employ the legal services of the Law Firm Defendants, including the Arzadi Defendants. According to the Complaint, the Arzadi Defendants improperly directed their legal staff to recruit clients from chiropractic and acupuncture facilities that were controlled by the Bandy Defendants. Patients were allegedly identified through motor vehicle accident reports, brought to be treated at Bandy controlled facilities and ultimately referred as clients to the Law Firm Defendants, including the Arzadi Defendants.

As alleged in the Complaint, pursuant to the "Bandy Attorney Kickback Scheme," the Bandy Defendants referred patients, including the Allstate Claimants, or caused them to be referred to the Law Firm Defendants, including the Arzadi Defendants, in exchange for unlawful referral fees, or "kickbacks." The Complaint asserts that the Arzadi Defendants utilized various advertising and marketing methods to individuals involved in auto accidents

identified from police reports. The Complaint also specifies that the Arzadi Defendants obtained referrals of personal injury clients, including the Allstate Claimants, by paying runners, who then used police reports to identify individuals involved in motor vehicle accidents and contacted them in person to solicit them to undergo treatment at one of the chiropractic facilities controlled by the Bandy Defendants and/or to retain the Arzadi Defendants, or one of the other Law Firm Defendants, to represent them in making bodily injury claims. As alleged in the Complaint, in some cases, the representation of clients who had been recruited and referred to one Law Firm Defendant pursuant to the Bandy Runner Scheme and the Bandy Attorney Kickback Scheme were transferred to another Law Firm Defendant.

Additionally, the Complaint highlights a 2011 lawsuit filed by Milagros Alvarez, Esq. ("Alvarez"), an attorney formerly employed by Arzadi, against Arzadi in the Superior Court of New Jersey, Middlesex County, Docket No. Mid-L-7469-11 (the "Alvarez Suit"). According to the Complaint, in the Alvarez Suit, Alvarez, like the Allstate Plaintiffs, claimed that Arzadi was receiving patients from runners at chiropractic clients, which were later identified as Bandy-controlled clinics. In the Allstate Suit, it is alleged that, in connection with the Alvarez Suit, Alvarez signed a certification that detailed a series of events wherein Alvarez refused to sign up clients at a chiropractic clinic because a runner referred the patients. Alvarez allegedly believed that if she refused to continue to sign clients generated from runners, that Arzadi would fire her. Based on the Complaint, according to Alvarez, Arzadi actually acknowledged his law firm's practice of using runners and was made aware of its impropriety, but nevertheless instructed his staff to return to the chiropractic clinic where the runners operated and to continue to sign up clients. The Complaint asserts that Alvarez and her colleagues at Arzadi's firm resigned because they refused to unethically recruit patients from runners at the Bandy clinics.

The Defendants are alleged to have knowingly participated in the insurance fraud scheme and/or have prepared false or misleading medical bills, records, and/or reports submitted to the Allstate Plaintiffs or other insurers. The Complaint asserts that the Arzadi Defendants engaged in the ongoing insurance fraud conspiracy with the chiropractic clinics to fee-split and receive unlawful kickbacks, and have at all times known that the clinics were unlawfully owned and/or controlled by the Bandy Defendants. The Complaint alleges that any and all arrangements or agreements between the Arzadi Defendants and the other Defendants to pay kickbacks, whether in money or any form including the reciprocal referral of patients/clients violated various New Jersey statutes, including the New Jersey Insurance Fraud Prevention Act (the "IFPA").

There are sixteen counts in the Complaint against the Defendants, which assert claims for Declaratory Judgment, Unjust Enrichment, various Violation of the IFPA, Violations of the N.J. Administrative Code ("N.J.A.C.") for Unlawful Practice Structure, Violation of the Corporate Practice of Medicine Doctrine, Violation of the Anti-Kickback Provisions of the N.J.A.C., Violation of the No Fault Statute and Regulations, Kickbacks in Violation of N.J.A.C., Referrals for Diagnostic Testing in Violation of N.J.A.C, Violations of N.J.A.C. Pertaining to Practice Structure, Self Referrals in Violation of the N.J.A.C., Referrals for Diagnostic Testing in Violations of N.J.A.C and Violations of N.J.A.C Pertaining to Practice Structure. The Complaint seeks unspecified forms of damages.

## II. THE POLICY

Evanston issued to the Law Offices of Karim Arzadi ("Arzadi Law" or the "Insured") Lawyers Professional Liability Insurance Policy Number LA808257 on a claims made basis for the May 23, 2016 to May 23, 2017 period (the "Policy"). The Policy contains limits of liability of $3,000,000 each Claim and in the aggregate, subject to a $25,000 each Claim deductible. Both Claim Expenses and Damages are included within the limits of liability, and both are applied against the deductible. Coverage under the Policy is subject to a full prior acts retroactive date and the following endorsement: EIC 4115-01 203 25% Minimum Earned Premium Endorsement.

The following relevant provisions are set forth at the outset of the Policy:

THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium pad, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underlying information submitted on behalf of the Insured, and subject to the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

Throughout this policy, the term Company refers to the insurance company providing this insurance.

**THE INSURED**

The unqualified word "Insured", either in the singular or plural, means:

A. the Named Insured specified in Item 1. of the Declarations or any Predecessor Firm;

B. any lawyer who is a past, present or future partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured solely for Professional Legal Services;

\* \* \*

The Policy also contains the following relevant Insuring Agreement provision:

**INSURING AGREEMENT**

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or the Extended Reporting Period, if

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

**Kennedys CMK**

exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, by reason of:

A.  a Wrongful Act arising out of Professional Legal Services; or

B.  Personal Injury committed by the Insured;

provided:

1.  the entirety of the Wrongful Act or Personal Injury happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

2.  prior to the effective date of this policy no Insured had any knowledge of such Wrongful Act or Personal Injury or any fact, circumstance, situation or incident which would lead a reasonable person in that Insured's position to conclude that a Claim was likely.

Also, the Policy contains the following relevant Definitions:

**DEFINITIONS**

A.  **Claim** means a demand received by the Insured for Damages and shall include the service of suit or institution of arbitration proceedings against the Insured.

\* \* \*

C.  **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include: (1) punitive or exemplary damages or any multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return, withdrawal, reduction, restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services or goods.

\* \* \*

H.  **Predecessor Firm** means any legal entity which was engaged in the practice of law to whose financial assets

      and liabilities the Named Insured is the majority successor in interest and which is designated in the application as a Predecessor Firm.

* * *

J.    **Professional Legal Services** means services rendered by an Insured (1) as a lawyer, as a notary public, as a mediator, as a title insurance agent, or as an administrator, conservator, executor, guardian, trustee other than a trustee in bankruptcy, or any other similar fiduciary, provided that such services are connected with and incidental to the Insured's profession as a lawyer and are performed by or on behalf of the Named Insured or any Predecessor Firm; or (2) as a director or officer of any bar association, its governing body or any of its committees, provided that such services were rendered while such Insured was a partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured.

K.    **Wrongful Act** means any act, error or omission by the Insured in rendering or failing to render Professional Legal Services for others.

The Policy also contains the following relevant Exclusions:

**THE EXCLUSIONS**

This policy does not apply to:

A.    any Claim based upon or arising out of a contract or agreement for, or any other right relating to, payment of or division of any fees or fee apportionment between the Insured and any lawyer;

* * *

F.    any Claim based upon, arising out of, or in any way involving any deliberately criminal, dishonest or fraudulent act, error or omission if a judgment or other final adjudication adverse to the Insured establishes that the Insured committed a criminal, dishonest or fraudulent act, error or omission; provided, however, any criminal, dishonest or fraudulent act, error or omission pertaining to any Insured under this policy shall not be imputed to any other Insured under this policy for the purpose of determining the applicability of this exclusion.

The Policy also contains the following relevant provisions:

### LIMITS OF LIABILITY

\* \* \*

E. **Multiple Insureds, Claims and Claimants:** The Inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 4. of the Declarations. More than one Claim arising out of single Wrongful Act or Personal Injury or a series of related Wrongful Acts or Personal Injuries shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy period on which such notice of potential Claim is first received by the Company.

\* \* \*

### DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

\* \* \*

A. **Defense, Investigation and Settlement of Claims:**

1. The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

\* \* \*

(b) The Company shall select defense counsel;

\* \* \*

B. **Consent to Settlements:**

\* \* \*

2. The Insured shall not, without respect to any Claim covered under this policy, except at this/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

# Kennedys CMK

any dispute, waive any rights or incur Claim Expenses without the Company's prior written consent, such consent not be unreasonably withheld. Any costs and expenses incurred by the Insured prior the Insured giving written notice of the Claim to the Company shall be borne by the Insured and will not constitute satisfaction of the Deductible.

\* \* \*

### CLAIMS

A. **Claim Reporting Provision:** The Insured shall give to the Company written notice as stated in Item 10. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

\* \* \*

### OTHER CONDITIONS

\* \* \*

F. **Other Insurance:** This insurance shall be in excess of the Deductible stated in Item 5. of the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

### III. COVERAGE POSITION

A. <u>INSURED STATUS</u>

In addition to Arzadi Law, any lawyer who is a past, present, or future partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of Arzadi Law will also potentially qualify as an insured under the Policy. Coverage for any Insured under

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

**Kennedys CMK**

the Policy is solely for Professional Legal Services, which is defined under the Policy to mean, in relevant part, services rendered by an Insured as a lawyer.

Additionally, under the Policy, any Predecessor Firm will also potentially qualify for Insured status. The term Predecessor Firm is defined under the Policy to mean any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Named Insured is the majority successor in interest and which is designated in the application as a Predecessor Firm.

In the Allstate Suit, it is alleged that Arzadi operated a personal injury practice under the trade names of Arzadi Law and Arzadi and Associates. The suit further alleges that Arzadi formed Arzadi, Joworisak & Associates, LLC, which was subsequently known as Joworisak. It is further alleged that Arzadi Law is the managing member of Joworisak & Associates with a 99% membership interest and that Donald T. Joworisak and Associates, LLC has a 1% interest.

The policy applications in Evanston's possession identify Joworisak as a Predecessor Firm to Arzadi Law. Therefore, Evanston reserves its rights to disclaim coverage to Joworisak for the Allstate Suit to the extent that Arzadi Law is not a majority successor in interest of Joworisak's financial assets and liabilities and/or Joworisak does not otherwise qualify as a Predecessor Firm under the terms of the Policy.

Although the Arzadi Defendants appear to qualify for Insured status under the Policy, as set forth in more detail below, it is Evanston's position that the Claim asserted against those Defendants does not satisfy the Policy's definition of Professional Legal Services. Therefore, there is no coverage under the Policy for the Arzadi Defendants in connection with the Allstate Suit because the Claim is not made against them in their insured capacity.

B.   **THE INSURING AGREEMENT**

  1.   **Timing of the Claim**

The Policy's Insuring Agreement states, in relevant part, that the Company shall pay on behalf of the Insured all sums in excess of the Deductible which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period and reported to the Company pursuant to Section Claims A., Reporting Provision. The Policy further provides that more than one Claim arising out of single Wrongful Act or Personal Injury or a series of related Wrongful Acts or Personal Injuries shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act is made.

The Alvarez Suit was filed against Arzadi and his firm on October 21, 2011, which is prior to the inception date of the Policy. The Alvarez Suit alleges substantially similar and overlapping allegations as those contained in the Allstate Suit. Namely, that Arzadi and his firm improperly signed up clients at chiropractor offices through the use of runners and that Arzadi was informed that his firm's use of runners to gain client referrals gave rise to ethical violations.

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

**Kennedys CMK**

To the extent that the Alvarez Suit and the Allstate Suit arise out of a single Wrongful Act, or a series of related Wrongful Acts, both suits shall be considered a single Claim and shall be deemed first made on the date that the Alvarez Suit was filed on October 21, 2011. Therefore, to the extent both suits are considered a single Claim, then coverage for the Allstate Suit is barred under the Policy as that matter is not considered a Claim first made against an Insured and reported to Evanston during the Policy's period as required under the terms of the Policy's Insuring Agreement provision. Evanston reserves its rights accordingly with respect to the timing of this Claim.

2. **Wrongful Act Arising out of Professional Legal Services**

The Policy's Insuring Agreement is also only potentially triggered by reason of a Wrongful Act arising out of Professional Legal Services. Under the Policy, Wrongful Act means any act, error or omission by the Insured in rendering or failing to render Professional Legal Services for others. Professional Legal Services under the Policy means, in relevant part, services rendered by an Insured as a lawyer.

The Allstate Suit alleges that the Arzadi Defendants obtained referrals of the Allstate Claimants and other personal injury clients by paying kickbacks directly to runners and/or indirectly through payments to others. The suit goes on to assert that the alleged runners, acting in concert with the Arzadi Defendants, used police reports to identify individuals who had been involved in automobile accidents, and contacted them in person to solicit them to undergo treatment with one or more of the clinics controlled by the Bandy Defendants and to engage the Arzadi Defendants or the other Law Firm Defendants in furtherance of the Bandy Runner Scheme and the Bandy Attorney Kickback Scheme.

The Allstate Suit further alleges that the Arzadi Defendants knowingly obtained referrals of personal injury clients, including the Allstate Claimants, who were recruited by the alleged runners and that in exchange for these referrals and for being able to sign up clients at the defendant clinics, the Arzadi Defendants gave "in kind" kickbacks in the form of reciprocal referrals to certain of the Defendants. It is alleged that the Arzadi Defendants knew that the Bandy Defendants paid runners to recruit patients to treat at the clinics and knew that the client referrals that they received were the result of payments to runners for soliciting people to make claims for PIP benefits and for personal injury benefits in violation of the New Jersey law.

Coverage under the Policy is only potentially triggered by reason of a Wrongful Act arising out of Professional Legal Services, as those terms are defined under the Policy, i.e., for an act, error or omission by the Insured in rendering or failing to render services as a lawyer for others. The Claim asserted against the Arzadi Defendants alleges agreements made by the Insureds as part of an illegal conspiracy and kickback scheme and are not services. Additionally, the entirety of the Claim concerns the Insureds' alleged improper and illegal acts to conspire with the Bandy Defendants and their chiropractic clinics to receive client referrals, to engage in a kickback scheme and to ultimately defraud the Allstate Plaintiffs. The counts in the Allstate Suit asserted against the Arzadi Defendants are for violations of New Jersey statutes, including the IFPA. The damages the Allstate Suit seeks concern the conspiracy and kickback schemes the Arzadi Defendants allegedly engaged in. This Claim has nothing to do with the quality or sufficiency of the legal services actually rendered by the

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

**Kennedys CMK**

Arzadi Defendants, nor are clients of the Arzadi Defendants asserting this Claim. Namely, the Claim does not concern services rendered by a lawyer as contemplated by the Policy.

Further, the Allstate Suit alleges that the Arzadi Defendants paid the kickbacks and defrayed the costs of client advertising methods from the proceeds of the kickback moneys. These alleged acts were for the benefit of the Arzadi Defendants. The Arzadi Defendants' alleged acts for their own benefit do not constitute services rendered by a lawyer for others.

For these reasons, Evanston disclaims coverage for the Allstate Suit on the grounds that the Insuring Agreement provisions of the Policy are not satisfied because the Claim asserted against the Arzadi Defendants is not made by reason of a Wrongful Act arising out of Professional Legal Services.

### 3. Prior Knowledge

The Insuring Agreement further provides in relevant part that coverage under the Policy is only potentially triggered if, prior to the effective date of the Policy, no Insured had any knowledge of the Wrongful Act at issue or any fact, circumstance, situation or incident which would lead a reasonable person in that Insured's position to conclude that a Claim was likely.

The Allstate Suit alleges that on October 21, 2011, the Alvarez Suit was filed against Arzadi, wherein Alvarez, a former employee of Arzadi, alleged that Arzadi wrongfully received referrals from runners and signed-up clients at one or more of the same chiropractor's offices at issue in the Allstate Suit. That suit specifically alleged that Arzadi, while employed at his law firm, violated the rules of professional conduct and was advised of possible ethics violations in retaining clients from a chiropractor's office through the use of runners. Certifications filed in the Alvarez Suit indicate that Alvarez and/or other former employees confronted Arzadi about his use of runners to secure client referrals being unethical, improper, and contrary to the accepted standards in the practice of law. Those former employees also certified that they advised Arzadi that they did not want to lose their licenses to practice law because of Arzadi's use of runners.

The Allstate Suit further alleges that Arzadi's involvement with runners who unlawfully owned or controlled chiropractic clinics was also implicated in the matter styled <u>Allstate, et al. v. Gregorio Lajara, et al.</u>, Docket No. UNN-L-4091-08 (the "Lajara Suit"). According to the allegations in the Allstate Suit, Gregorio Lajara ("Lajara") opened and operated various chiropractic clinics in the same building where the Arzadi Defendants maintained a personal injury practice. It is alleged that Arzadi knew that the chiropractors were owners on paper only and that Lajara was the *de facto* owner of the clinics and controlled where their patients were referred for treatment. It is further alleged that Arzadi referred his clients for treatment to these clinics that were unlawfully owned by Lajara and received referrals of clients from them. The Allstate Suit goes on to allege that on January 15, 2016, the paper owner of one of the clinics testified in the Lajara Suit that Arzadi was one of the lawyers who referred patients to Lajara's clinic. It is alleged that other individuals testified that Arzadi referred a large number of patients to clinics and participated in similar arrangements to make kickbacks or other payments to Arzadi in exchange for referrals of clients.

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

**Kennedys CMK**

To the extent that the Allstate Suit implicates a Wrongful Act, as that term is defined under the Policy, which Evanston denies, from at least October 21, 2011, which is prior to the effective date of the Policy, an Insured had knowledge of the Wrongful Act at issue in the Allstate Suit, or, at a minimum, of any fact, circumstance, situation or incident which would lead a reasonable person in the Insured's position to conclude that a Claim was likely. For this reason, Evanston disclaims coverage for the Allstate Suit on the additional grounds that the prior knowledge condition of the Insuring Agreement has not been met.

### 4. Damages

Additionally, the Policy is only triggered with respect to covered Damages, which is defined to mean the monetary portion of any judgment, award or settlement. Excluded from the definition of Damages are punitive, exemplary or treble damages, taxes, criminal or civil fines, attorneys' fees of a party other than an Insured, or other penalties imposed by law, sanctions, uninsurable matters and the return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services or goods. The Allstate Suit seeks uncovered damages in the form of declaratory judgments, disgorgement and reimbursement of benefits/fees paid, civil penalties, treble and punitive damages and attorneys' fees. Therefore, Evanston disclaims any coverage obligation with respect to these forms of uncovered Damages under the Policy.

### C. EXCLUSIONS

#### 1. Exclusion A

Under Exclusion A, the Policy does not apply to any Claim based upon or arising out of a contract or agreement for, or any other right relating to, payment of or division of any fees or fee apportionment between the Insured and any lawyer. The Allstate Suit is replete with allegations that the Law Firm Defendants, including the Arzadi Defendants, participated in the Bandy Attorney Kickback Scheme by knowingly engaged in conduct that violated the IFPA, including by making or receiving client referrals in exchange for kickbacks directly or indirectly in the form of money. Based on these allegations, Evanston reserves its right to disclaim coverage under Exclusion A to the extent the allegations in the Allstate Suit are based upon or arise out of a contract or agreement for, or any other right relating to, payment of or division of any fees or fee apportionment between the Insured and any lawyer.

#### 2. Exclusion F

Under Exclusion F, the Policy does not apply to any Claim based upon, arising out of, or in any way involving any deliberately criminal, dishonest or fraudulent act, error or omission if a judgment or other final adjudication adverse to the Insured establishes that the Insured committed a criminal, dishonest or fraudulent act, error or omission.

The Allstate Suit is replete with allegations that the Arzadi Defendants committed intentional, willful, dishonest and fraudulent acts and violations of statutes and regulations in connection with the Bandy Runner Scheme and the Bandy Attorney Kickback Scheme. Consequently, Exclusion F serves as a basis for Evanston to disclaim coverage should a judgment or other final adjudication establish that these barred acts were committed. In this regard, Evanston reserves its rights with respect to the application of Exclusion F.

### D. CLAIM REPORTING PROVISION

Under the Policy's "Claim Reporting Provision," the Insured shall give to the Company written notice as stated in Item 10. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period. That provision further provides that in the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives. The Allstate Suit was filed on January 3, 2017 and the Arzadi Defendants were served on or about January 4, 2017. Evanston and/or Markel Service, Incorporated did not receive notice of the Allstate Suit until on or about March 9, 2017. Therefore, Evanston reserves its rights to disclaim coverage for the Allstate Suit to the extent that the terms of the Policy's Claim Reporting Provision were breached and/or not fully satisfied.

### E. CONSENT

The Policy states that Evanston shall have the right and duty to defend and investigate any Claim to which coverage under the Policy applies, and that Evanston shall select defense counsel. Without first informing Evanston, the Insureds retained counsel of their own choosing to defend against the Allstate Suit. Although, as set forth herein, Evanston disclaims any coverage obligation under the Policy for the Allstate Suit, Evanston also reserves its rights to the extent the Policy's terms have been breached in connection with the Insureds' selection and retention of defense counsel.

Under the section of the Policy entitled "Consent to Settlements," the Policy further provides that the Insured shall not, with respect to any Claim covered under the Policy, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without Evanston's prior written consent, such consent not to be unreasonably withheld. This section also states that any costs and expenses incurred by the Insured prior to the Insured giving written notice of the Claim to the Company shall be borne by the Insured and will not constitute satisfaction of the Deductible. Although, as set forth herein, Evanston disclaims any coverage obligation under the Policy for the Allstate Suit, Evanston also reserves its rights under the terms of the Policy's "Consent to Settlements" provision.

### F. OTHER INSURANCE

The "Other Insurance" provision contained in the Policy provides that the Policy shall be in excess of the deductible and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in the Policy. It is our understanding that other insurance may be available to the Insureds with respect to the Allstate Suit. We ask that you provide us with copies of all insurance policies under which you have tendered the Allstate Suit, together with any correspondence with the insurers that issued those policies. Although, as set forth herein, Evanston disclaims any coverage obligation under the Policy for the Allstate Suit, based upon the Policy's "Other Insurance" provision, Evanston reserves its rights accordingly.

G. RESCISSION

The outset of the Policy provides that the Company and the Insured agree to the Policy terms in consideration of and reliance upon, among other things, "the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured." Included in Evanston's underwriting material are various Lawyers Professional Liability Insurance policy applications submitted by the Insured.

As set forth above, on October 21, 2011, Alvarez filed the Alvarez Suit against Arzadi. As alleged in the Allstate Suit, on November 28, 2011, Alvarez filed a Stipulation of dismissal without prejudice as to the 2011 Alvarez Compliant and then on or about May 16, 2012, filed a second Complaint against Arzadi and Arzadi & Associates alleging similar allegations as those contained in the 2011 Alvarez Complaint.

Arzadi's Allied World Lawyers Professional Liability Renewal Application dated April 24, 2013, which is after the filing of the second 2012 Alvarez Complaint, discloses in a Claim Supplement the Alvarez Suit. However, the initial 2011 Alvarez Complaint is not disclosed in Arzadi's: (1) December 21, 2011 Darwin National Assurance Company's ("Darwin") Lawyers Professional Liability Insurance Application and New Attorney Supplement; (2) March 28, 2012 Darwin Renewal Application; or (3) April 12, 2012 Ironshore Lawyers Professional Liability Insurance application. Additionally, despite the 2011 Alvarez Suit being dismissed without prejudice on November 28, 2011, on Arzadi's April 12, 2012 Darwin application, Arzadi answered "no" to the question of whether any of the attorneys in his firm were aware of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them.

As such, Evanston reserves its rights to rescind the Policy based on any material misrepresentations set forth in applications leading to the issuance of the Policy and/or the underwriting information submitted on behalf of the Insured.

IV. CONCLUSION

In light of the foregoing, Evanston has no coverage obligation for the Allstate Suit. Thus, Evanston disclaims coverage for the Allstate Suit under the Policy and reserves its rights to disclaim coverage based upon the grounds set forth more fully above.

Evanston's actions in investigating, evaluating or monitoring this Claim should not be construed as constituting a waiver or other relinquishment of Evanston's right to deny coverage at a later date, nor as an admission of any obligation under the Policy. Evanston further acknowledges that any Insured under the Policy likewise retains all rights. The Insured(s) are not being asked to waive or relinquish any rights under the Policy or under the law. Because Evanston is disclaiming any coverage obligation for the Allstate Suit, the Insureds may wish to consult with their own coverage counsel. Any such consultation will be at their own expense.

The foregoing statement of Evanston's position is based upon information that has been provided to Evanston to date. If you have additional information regarding this Claim, please forward it to my attention for consideration. This disclaimer of coverage is not intended to be, nor shall it be construed as, a waiver of any right or basis that Evanston may

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

**Kennedys CMK**

have to disclaim coverage, and Evanston expressly reserves all rights in this regard. Neither this correspondence nor any subsequent communication should be deemed or construed as an admission of coverage under the Policy, or as a waiver of any right or defense to coverage available under that policy, or at law or in equity. Evanston may supplement the foregoing denial to include any additional potential basis for reservation or denial that may be subsequently identified.

Should you have any questions concerning this correspondence or should you wish to discuss it further, please do not hesitate to contact me.

Very truly yours,

*Christina R. Salem*

**Christina R. Salem**
Partner
For Kennedys CMK


cc:    Michael J. Tricarico

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

**Kennedys CMK**

### APPEAL PROCEDURE

1. Must submit request for appeal in writing to David Vanalek within 20 days of the date of our letter.

    David Vanalek, Claims Director
    Internal Appeals Administrator
    Markel Service, Incorporated
    Ten Parkway North
    Deerfield, IL  60015

2. All additional information that you wish the Internal Review Panel to review must be enclosed with the letter.  Please give all the reasons why you think the coverage opinion was improperly considered.

3. The review must be conducted within 10 business days by the Internal Review Panel.

4. The Internal Review Panel will review the claim file and any information submitted by the insured or consumer.

5. The Internal Review Panel will render its decision in writing within 10 business days of the date the complaint is received.

6. David Vanalek, the Internal Appeals Administrator, can be reached at 847-572-6347 or 1-800-502-3200, ext 46347. The fax number is 855-662-7535.