BENEDICT AND ALTMAN
Philip Nettl Attorney ID # 026422004
247 Livingston Avenue
New Brunswick, New Jersey 08901
(732) 745-9000
Attorneys for Plaintiffs
pnettl@benedictandaltman.com

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KARIM ARZADI, JOWORISAK & ASSOCIATES, LLC, f/k/a/ ARZADI, JOWORISAK & ASSOCIATES and LAW OFFICES OF KARIM ARZADI,<br><br>        Plaintiffs,<br><br>        -versus-<br><br>EVANSTON INSURANCE COMPANY and MARKEL CORPORATION and ABC INSURANCE COMPANY, 1-10,<br><br>        Defendants. | Civil Action No. 2:17-cv-05470 (SDW-CLW)<br><br>**NOTICE OF PLAINTIFFS' MOTION FOR A PROTECTICVE ORDER AND TO STAY PROCEEDINGS**<br><br>**RETURN DATE: JUNE 18, 2018**<br><br>**ORAL ARGUMENT REQUESTED** |

**PLEASE TAKE NOTICE** that on June 18, 2018,

Plaintiffs, KARIM ARZADI, JOWORISAK & ASSOCIATES, LLC,

f/k/a/ ARZADI, JOWORISAK & ASSOCIATES and LAW OFFICES

OF KARIM ARZADI, will and hereby do respectfully move

this Court to enter a protective order and stay all

proceedings, including discovery, in this case pending

- 1 -

the outcome of the New Jersey Superior Court matter,

*Allstate Insurance Company et al. v. Bandy et al.*, OCN-19-17.

This motion is based on this Notice of Motion, the concurrently-filed Brief in Support of Motion, Certification of Philip Nettl, Esq., in Support of the Motion and the Exhibits thereto, the Proposed Order, the pleadings and papers on file in this action, and on such other and further evidence as may be presented prior to, and at, the hearing on this motion.

Oral Argument is respectfully requested.


Dated:  May 25, 2018          BENEDICT AND ALTMAN

                              BY: */s/ Philip Nettl*
                                  Philip Nettl

# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARIM ARZADI, JOWORISAK & ASSOCIATES, LLC, f/k/a/ ARZADI, JOWORISAK & ASSOCIATES and LAW OFFICES OF KARIM ARZADI, | Civil Action No. 2:17-cv-05470 (SDW-CLW) |
| Plaintiffs, | |
| -versus- | |
| EVANSTON INSURANCE COMPANY and MARKEL CORPORATION and ABC INSURANCE COMPANY, 1-10, | **ORAL ARGUMENT REQUESTED**<br><br>**Return Date:    June 18, 2018** |
| Defendants. | |

---

## BRIEF IN SUPPORT OF PLAINTIFFS'
## MOTION FOR A PROTECTIVE ORDER/TO STAY PROCEEDINGS

---

### **\*\*ORAL ARGUMENT REQUESTED\*\***

Philip Nettl, Esq.
ID No.: 026422004
**BENEDICT AND ALTMAN**
247 Livingston Avenue
New Brunswick, New Jersey  08901
(732) 745-9000
pnettl@benedictandaltman.com
Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . .   i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . .   ii

INTRODUCTION AND STATEMENT OF FACTS . . . . . . . . . .   1

SUMMARY OF LEGAL ARGUMENT . . . . . . . . . . . . . . .   2

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . .   4

POINT I
EVANSTON CANNOT INVOKE THE EUO PROVISION OF
THE POLICY'S COOPERATION CLAUSE . . . . . . . . . . . .   4

POINT II
AN EUO IS NOT REQUIRED, REASONABLE AND FAIR
UNDER THE PRESENT CIRCUMSTANCES . . . . . . . . . . . .   6

POINT III
EVANSTON WAIVED ITS RIGHT TO AN EAMINATION UNDER
OATHOR IS ESTOPPED FROM ENFORCING IT. . . . . . . . . .   9

POINT IV
THIS ACTION SHOULD BE STAYED PENDING THE
OUTCOME OF THE STATE COURT LAWSUIT. . . . . . . . . . .  12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . .  15

## TABLE OF AUTHORITIES

**Case**                                                                    **Page**

*AMB Prop., LP v. Penn Am. Ins. Co.*,
418 N.J. Super. 441, 14 A.3d 65 (App. Div. 2011). . . . . .   9

*Beckley v. Otsego Cty. Farmers Co-op. Fire Ins. Co.*,
3 A.D.2d 190,159 N.Y.S.2d 270 (1957). . . . . . . . . . . .  11

*Butler v. Bonner & Barnewall, Inc.*,
56 N.J. 567, 267 A.2d 527(N.J. 1970). . . . . . . . . . .   6

*Capece v. Allstate Ins. Co.*,
86 N.J. Super. 462, 207 A.2d 207 (Law. Div. 1965) . . . . .  11

*Ciccone v. Colonial Life Ins. Co. of Am.*,
110 N.J.L. 276, 164 A. 444 (1933) . . . . . . . . . . . .  11

*Claflin v. Commonwealth Ins. Co.*,
110 U.S. 81, 3 S. Ct. 507, 28 L. Ed. 76 (1884). . . . . . .   7

*Foreign Credit Corp. v. Aetna Cas. & Surety Co.*,
276 F. Supp. 791 (S.D.N.Y. 1967). . . . . . . . . . . . .  10

*Glenbrook Estates, Inc. v. Wausau Ins. Companies*,
No. 07-678(JAP), 2007 WL 4259993 (D.N.J. Nov. 30, 2007) . .  13

*Guarraia v. Metro. Life Ins. Co.*,
90 N.J.L. 682, 101 A. 298 (1917). . . . . . . . . . . . .  11

*Haskel, Inc. v. Superior Court*,
33 Cal. App. 4th 963, 39 Cal. Rptr. 2d 520(1995). . . . . 13,14

*Jensen v. Palatine Ins. Co.*,
81 Neb. 523, 116 N.W. 286 (Neb. 1908) . . . . . . . . . .  10

*Longobardi v. Chubb Ins. Co. of New Jersey*,
121 N.J. 530, 582 A.2d 1257 (N.J. 1990) . . . . . . . . .   7

*McNamee v. Metro. Life Ins. Co.*,
137 N.J.L. 709, 61 A.2d 271(1948) . . . . . . . . . . . .  11

*Memorial Props., LLC v. Zurich Am. Ins. Co.*,
210 N.J. 512, 46 A.3d 525 (N.J. 2012) . . . . . . . . . .   6

**Page**

*NL Indus., Inc. v. Commercial Union Ins. Co.*,
926 F. Supp. 446 (D.N.J. 1996) . . . . . . . . . . . . . . . 10

*New Jersey Auto. Full Ins. Underwriting Ass'n v. Jallah*,
256 N.J. Super. 134, 606 A.2d 839(App. Div. 1992). . . . . . 9

*Papalia v. Arch Ins. Co.*, No. 15-2856, 2017 U.S. Dist. LEXIS
121520(D.N.J. Aug. 1, 2017). . . . . . . . . . . . . . . . . 5,6

*Roach v. BM Motoring, LLC*,
228 N.J. 163, 155 A.3d 985(2017) . . . . . . . . . . . . . . 5

*State Auto Ins. Companies v. Summy*,
234 F.3d 131(3d Cir. 2000) . . . . . . . . . . . . . . . . .3,12

*Terra Nova Ins. Co. v. 900 Bar, Inc.*,
887 F.2d 1213(3d Cir. 1989). . . . . . . . . . . . . . . . . 13

*United States v. Com. of Pa., Dep't of Envtl. Res.*,
923 F.2d 1071 (3d Cir. 1991) . . . . . . . . . . . . . . 3,12,13

*Weisman v. New Jersey Dep't of Human Servs.*,
982 F. Supp. 2d 386(D.N.J. 2013),
*aff'd*, 593 Fed. Appx. 147 (3d Cir. 2014) . . . . . . . . . . 5

*Wingates, LLC v. Commonwealth Ins. Co. of Am.*,
21 F. Supp. 3d 206, 219 (E.D.N.Y. 2014),
*aff'd*, 626 F. App'x 316 (2d Cir. 2015) . . . . . . . . . . . 8

**INTRODUCTION**
**AND**
**STATEMENT OF FACTS**

This is an insurance coverage dispute.  The Plaintiffs,
Karim Arzadi, Joworisak & Associates, LLC, f/k/a Arzadi,
Joworisak & Associates and the Law Offices of Karim Arzadi
("Plaintiffs" or "the insureds") move now for a stay of these
proceedings, a stay of discovery or alternatively for a
protective order.

On February 7, 2018, the Court granted Plaintiffs' motion
for partial summary judgment and held that the Defendant,
Evanston Insurance Company has a duty to defend the Plaintiffs.
The operative facts are set forth at pages one through three,
inclusive, of the Court's confirming Order.  (See Nettl Aff.,
Ex. "A").

In this action, Plaintiffs seek coverage under a
professional liability policy issued by the defendant, Evanston
Insurance Company ("Evanston")(also "Defendant" or "the insurer"
or "the carrier").  Plaintiffs are Evanston insureds who were
sued in an action in the Superior Court of New Jersey.  Evanston
denied coverage and Plaintiffs commenced this action in New
Jersey state court.  The carrier removed the matter to this
Court based upon diversity of citizenship.

Plaintiffs bring this motion because Evanston is now seeking to take the Statement Under Oath (SUO)[1] of plaintiff, Karim Arzadi, a named insured.  Previously, Evanston had agreed to submit the issue of its duty to defend Plaintiffs on cross-motions for partial summary judgment.  The Court granted Plaintiffs' partial summary judgment and ruled that Evanston has an obligation to defend Plaintiffs in the underlying state court action (the "*Allstate* suit").  On the issue of indemnification, the Court held that: "Because the Allstate suit is pending, this Court finds that it is premature to make a determination on the issue of whether indemnification applies." (Nettl Aff. Ex. "A," slip op. at 9).

Recently, Evanston has advised that it wishes to conduct an EUO of Mr. Arzadi.  Plaintiffs bring this motion to prevent that and to stay this case and all discovery.  In the Allstate state court suit, the discovery end date is March 31, 2020.  No arbitration or trial date has been scheduled.  (Nettl Aff. Ex. "B").

## SUMMARY OF LEGAL ARGUMENT

Plaintiffs raise several arguments why Evanston is not entitled to an EUO or discovery now and why this case should be stayed pending the outcome of the state court case.

---

[1]   The "Statement Under Oath" will be referred to in this brief as an "Examination Under Oath" and "EUO".

First, Evanston breached the insurance policy by failing to provide Plaintiffs with a defense in the underlying suit. The carrier may not now stand upon the conditions of the very contract it saw fit to breach.

Second, the policy allows only EUOs which are "required" and New Jersey law permits such proceedings as are reasonable and fair.  An EUO now that the duty to defend has been established is neither required, fair nor reasonable.

Third, now that its duty to defend the state court suit has been established, Evanston has waived or is estopped from insisting that its insureds sit for an EUO.

Finally, in the exercise of its discretion, the Court should stay the instant case 1) to further the general policy of restraint when the same issues are pending in a state court; 2) to avoid the inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; and 3) to avoid duplicative litigation.  *See State Auto Ins. Companies v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000), as amended (Jan. 30, 2001)(*citing United States v. Com. of Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1075-76 (3d Cir. 1991).

## POINT I

### EVANSTON CANNOT INVOKE THE EUO
### PROVISION OF THE POLICY'S
### COOPERATION CLAUSE

Evanston seeks to have Karim Arzadi attend an Examination

Under Oath.  The relevant policy language provides:

> C. Assistance and Cooperation of the
> Insured: The Insured shall cooperate with
> the Company and upon the Company's request,
> the Insured shall: (1) submit to examination
> and interview by a representative of the
> Company, under oath **if required**; (2) attend
> hearings, depositions and trials; (3) assist
> in effecting settlement, securing and giving
> evidence, obtaining the attendance of
> witnesses in the conduct of suits; (4) give
> a written statement or statements to the
> Company's representatives and meet with such
> representatives for the purpose of
> determining coverage and investigating
> and/or defending any Claim, all without cost
> to the Company other than expense
> reimbursement provided under Section
> Supplementary Payments. The Insured shall
> further cooperate with the Company and do
> whatever is necessary to secure and effect
> any right of indemnity, contribution or
> apportionment which the Insured may have.

(Nettl Aff. Ex. "C").

To be clear, Arzadi does not refuse to meet his obligation

to cooperate with Evanston.  Instead, he argues that at this

point there is no longer an obligation to sit for an EUO.

This motion first requires the Court to recognize

fundamental principles of insurance contract construction and

understand the nature of an examination under oath.

- 4 -

As the Court noted in granting the Plaintiffs partial summary judgment, "[a]n insurance policy is a form of contract, and its interpretation is a question of law for the court." (Nettl Aff. Ex. "A," slip op. at 4)(*citing Papalia v. Arch Ins. Co.*, No. 15-2856, 2017 U.S. Dist. LEXIS 121520, at *17)).

By granting Plaintiffs' motion for partial summary judgment, the Court necessarily concluded that the insurer had breached its duty to defend, thereby breaching its contract with the Plaintiffs. Evanston now seeks to enforce the terms of a very contact it breached. The law forbids parties to contracts from approaching them with such a "heads-I-win; tails-you-lose" attitude. It is elementary that "[a] material breach to a bilateral contract excuses the other party from performing its future obligations under that contract." *Weisman v. New Jersey Dep't of Human Servs.*, 982 F. Supp. 2d 386, 391 (D.N.J. 2013), *aff'd*, 593 Fed. Appx. 147 (3d Cir. 2014). The Supreme Court of New Jersey has likewise held that "[i]n the event of a 'breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement.'" *Roach v. BM Motoring, LLC*, 228 N.J. 163, 174, 155 A.3d 985, 991 (2017) (*quoting Nolan v. Lee Ho*, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990)).

## POINT II

### AN EUO IS NOT REQUIRED, REASONABLE AND FAIR
### UNDER THE PRESENT CIRCUMSTANCES

In the first instance, the court interprets the language of an insurance policy according to its plain and ordinary meaning. *Papalia v. Arch Ins. Co.*, No. 15-2856, 2017 U.S. Dist. LEXIS 121520, at *17 (*citing Memorial Props., LLC v. Zurich Am. Ins. Co.*, 210 N.J. 510,525, 46 A.3d 525, 532 (N.J. 2012).[2] Any ambiguity in a term of the policy is resolved in favor of the insured. *Memorial Props., LLC v. Zurich Am. Ins. Co.*, 210 N.J. at 525, 46 A.3d at 532; *see also Butler v. Bonner & Barnewall, Inc.*, 56 N.J. 567, 576, 267 A.2d 527, 532 (N.J. 1970) ("[T]he general rule of construction [is] that if the controlling language of a policy will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied.") (internal quotations omitted).

Applying these principles, Arzadi need only submit to an EUO if one is "required." That is what the policy, written by Evanston, says. If Evanston wished to bestow upon itself a broader contractual right to an EUO, it could have done so.

---

[2] Because this action is based on diversity jurisdiction, this Court must apply the substantive laws of the forum state, New Jersey. *Papalia v. Arch Ins. Co.*, No. 15-2856, 2017 U.S. Dist. LEXIS 121520, at *16 (D.N.J. Aug. 1, 2017). (*See* Nettl Aff. Ex. "A," slip op. at 4, n.6).

Plaintiffs recognize the distinction between an EUO and a deposition.  The examination under oath is an investigative tool.  The United States Supreme Court long ago explained that "[t]he object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims." *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94-95, 3 S. Ct. 507, 515, 28 L. Ed. 76 (1884).

The New Jersey Supreme Court has similarly held that "[t]he purpose of a provision requiring an insured to submit to an examination under oath is to enable the insurance company to acquire knowledge or information that may aid it in its further investigation or that may otherwise be significant to the company in determining its liability under the policy and the position it should take with respect to a claim."  *Longobardi v. Chubb Ins. Co. of New Jersey*, 121 N.J. 530, 541, 582 A.2d 1257, 1262 (N.J. 1990).

Here, Evanston already decided that Plaintiffs' claim was not covered and denied it.  This Court determined that Evanston was wrong.  A carrier cannot resurrect contractual rights it

-7-

slept on in order to take a second bite of the denial apple.

"[E]xaminations under oath are taken before litigation to
augment the insurer's investigation of the claim while a
deposition is not part of the claim investigation process."
*Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d
206, 219 (E.D.N.Y. 2014)(emphasis added), aff'd, 626 F. App'x
316 (2d Cir. 2015)(*quoting Goldman v. State Farm Fire Gen. Ins.
Co.*, 660 So.2d 300, 305 (Fla.Dist.Ct.App.1995)).  While an EUO
is an investigative tool which Evanston was entitled to employ,
the investigation ship sailed long ago.

Evanston unequivocally denied coverage (Nettl Aff. Ex. "D")
and forced the Plaintiffs to sue.   The Court has rejected
Evanston's argument that Plaintiffs' claim is not covered and
has ordered Evanston to defend Plaintiffs. Had Evanston wished
to conduct an EUO, it was free to do so prior to its (incorrect)
denial of coverage.  Instead, Evanston believed it possessed
enough information to evaluate (and wrongfully deny) Plaintiffs'
claim.  Once this litigation was commenced, it consented to
proceeding, without any discovery, to summary judgment on the
duty to defend issue.  Plaintiffs are aware of no authority for
permitting an insurance carrier to deny a claim, force its
insured to sue, then after losing, call time out in mid-
litigation, turn back the clock, invoke the policy it breached
and subject the insured to an EUO.

The Evanston policy, by its terms, permits EUOs that are "required."  Now that Evanston must defend Plaintiffs in the ongoing state court action, what possible purpose could an EUO serve?

Under New Jersey law, the right of an insurer to conduct an EUO is "[s]ubject to ordinary standards of reasonableness and fairness."  *New Jersey Auto. Full Ins. Underwriting Ass'n v. Jallah*, 256 N.J. Super. 134, 141, 606 A.2d 839, 842 (App. Div. 1992). Under the facts of this case, particularly its procedural posture, it is neither reasonable nor fair to compel Arzadi to attend an EUO.

Obviously, an investigative proceeding at this point could be adverse to Plaintiffs.  Evanston cannot put itself in that position in view of its previously adjudicated duty to defend Arzadi.  An EUO is not "required" (in the words of Evanston's policy).

## POINT III

### EVANSTON WAIVED ITS RIGHT TO AN EAMINATION UNDER OATH OR IS ESTOPPED FROM ENFORCING IT

"It is elementary that an insurer may waive any provision for its benefit and may waive any representation, warranty, condition or limitation in the policy upon which it would otherwise be entitled to rely. "  *AMB Prop., LP v. Penn Am. Ins.*

*Co.*, 418 N.J. Super. 441, 455–56, 14 A.3d 65, 73 (App. Div. 2011)(internal quotations omitted).

Plaintiffs are aware of no New Jersey case concerning an insurer waiving its right to an EUO.  However, it is settled that "[a] repudiation of liability by the insurer on the ground that the loss is not covered operates as a waiver of the notice requirements of the insurance contract and other conditions precedent." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 926 F. Supp. 446, 456 (D.N.J. 1996) (citing *H.S. Equities, Inc. v. Hartford Accident and Indem. Co.*, 661 F.2d 264, 270 (2d Cir. 1981)).  Following this logic, courts have held that an insurer's denial of coverage works a waiver of its right to insist upon an examination of the insured.  *Foreign Credit Corp. v. Aetna Cas. & Surety Co.*, 276 F. Supp. 791, 793 (S.D.N.Y. 1967)(describing the "majority rule" as being "that after an insurance company has denied liability on the policy, the insured need no longer comply with a provision which requires him to submit to an examination with regard to the loss").  *See also Jensen v. Palatine Ins. Co.*, 81 Neb. 523, 116 N.W. 286, 290 (Neb. 1908) (Insurer "ought not to have the right to demand [an] examination after its formal denial of liability. Besides, the delay of six months after the commencement of the action and seven months after such denial of liability is unreasonable.")

- 10 -

When an insurer disclaims liability, "[i]t may not thereafter attempt to create other grounds for refusal to pay by demanding compliance by the insured with other incidental provisions of the policy with which it had not demanded compliance prior to its repudiation of liability." *Beckley v. Otsego Cty. Farmers Co-op. Fire Ins. Co.*, 3 A.D.2d 190, 194, 159 N.Y.S.2d 270, 274 (1957). This is particularly true where, as here, the carrier's basis for disclaiming coverage has been adjudged wrongful. While Plaintiffs are aware of no New Jersey case applying this logic to an EUO requirement, New Jersey courts have followed this same rule of waiver in other contexts. *See McNamee v. Metro. Life Ins. Co.*, 137 N.J.L. 709, 713, 61 A.2d 271, 273 (1948)("absolute denial of liability without reference to formal policy requirements which might be fulfilled, will constitute a waiver"); *Ciccone v. Colonial Life Ins. Co. of Am.*, 110 N.J.L. 276, 280, 164 A. 444, 445-46 (1933) ("If the insurer refuses to pay at all, and bases its refusal upon some distinct ground without reference to the want or defect of the preliminary proof, the occasion for it ceases, and it will be deemed to be waived. Having denied that the policy was in force at the time of insured's death, and its liability having been established, [insurer] cannot now claim the benefit of the provision in the policy with respect to notice and due proof of death."); *Guarraia v. Metro. Life Ins. Co.*, 90 N.J.L.

682, 683, 101 A. 298 (1917) (letter denying benefits under life insurance policy was a waiver of the proof of death); *Capece v. Allstate Ins. Co*., 86 N.J. Super. 462, 474, 207 A.2d 207, 214 (Law. Div. 1965)(insurer which "unequivocally denied liability" waived notice of the suit or the forwarding of suit papers).

Here, Evanston unequivocally disclaimed "any coverage obligation for the Allstate suit" forcing Plaintiffs to seek coverage through this declaratory judgment action. (See Nettl Aff. Ex. "D," p. 14 of 16). Evanston has waived or is estopped from enforcing the EUO requirement of the policy's cooperation clause.

## POINT IV

### THIS ACTION SHOULD BE STAYED PENDING THE OUTCOME OF THE STATE COURT LAWSUIT

This declaratory judgment action should be stayed pending the outcome of the state court Allstate litigation. Such a stay should enter pursuant to *Terra Nova Ins. Co. v. 900 Bar, Inc*., 887 F.2d 1213 (3d Cir. 1989) and its progeny such as *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000), as amended (Jan. 30, 2001) and *United States v. Com. of Pa., Dep't of Envtl. Res.,* 923 F.2d 1071, 1075 (3d Cir.1991).

A court should consider the following factors in determining whether exercise its discretion to stay an insurance coverage declaratory judgment action pending the outcome of the

underlying suit: 1) a general policy of restraint when the same issues are pending in a state court;  2) the inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; and 3) avoidance of duplicative litigation.  *United States v. Com. of Pa., Dep't of Envtl. Res.*, 923 F.2d at 1075-76 (*discussing Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213(3d Cir. 1989)).

Plaintiffs commend to the Court the analysis of these factors found in *Glenbrook Estates, Inc. v. Wausau Ins. Companies*, No. 07-678(JAP), 2007 WL 4259993, at *4 (D.N.J. Nov. 30, 2007).  There, the court correctly observed that "[f]or [the insurer] to provide a defense in the state case while at the same trying to prove that [the insureds'] actions or omissions fall outside the coverage provisions is highly prejudicial to [the insureds]." *Glenbrook Estates, Inc. v. Wausau Ins. Companies*, No.07-678(JAP), 2007 WL 4259993, at *6 (D.N.J. Nov. 30, 2007).  This is the Plaintiffs' greatest concern and it is a legitimate one.  The reasons are apparent.

> "First, the insurer, who is supposed to be
> on the side of the insured and with whom
> there is a special relationship, effectively
> attacks its insured and thus gives aid and
> comfort to the claimant in the underlying
> suit; second, such a circumstance requires
> the insured to fight a two-front war,
> litigating not only with the underlying
> claimant, but also expending precious

> resources fighting an insurer over coverage
> questions—this effectively undercuts one of
> the primary reasons for purchasing liability
> insurance; and third, there is a real risk
> that, if the declaratory relief action
> proceeds to judgment before the underlying
> action is resolved, the insured could be
> collaterally estopped to contest issues in
> the latter by the results in the former."

*Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979, 39
Cal. Rptr. 2d 520, 529 (1995), *as modified* (Apr. 25, 1995). [3]

Now that Plaintiffs have obtained a ruling that Evanston
has a duty to defend them in the underlying state court suit,
Plaintiffs and Evanston are "on the same side."  By engaging in
discovery in this case or forcing Arzadi to sit for an EUO,
Evanston would necessarily place itself in a position
adversarial to its insured. Conducting discovery or an EUO
pursuant to an confidentiality order or agreement is no answer.
It is not clear that the parties to the state court suit, or the
state court, would be bound by such an order in that litigation.
More importantly, Evanston could, conceivably, use facts learned
in an EUO or other discovery in this case to attempt to
extricate itself from its policy with Plaintiffs. If it was
successful, the resulting order/ opinion of this Court would
have a preclusive effect in the state court litigation

---

[3]   *Haskell* is well-reasoned, oft-cited and consistent with the
law of this circuit as expressed in *Terra Nova Ins. Co. v. 900
Bar, Inc.*, *State Auto Insurance Companies v. Summy* and *United
States v. Commonwealth of Pennsylvania, Department of
Environmental Resources.*

notwithstanding any confidentiality agreement relating to the underlying discovery or EUO.

The Court has correctly held that Evanston's remaining obligations under the professional Liability Policy (i.e. duty to indemnify) must await the outcome of the state court litigation. (Nettl Aff. Ex. "A," slip op. at 9). There is nothing else for this Court to do nor is there any reason for Arzadi to submit to an EUO now. The sound exercise of this Court's discretion calls for this case and all discovery to be stayed. While an EUO is not technically discovery, that too should be stayed or a protective order entered, as well.

## CONCLUSION

For the foregoing reasons, Plaintiffs motion for a protective order/to stay proceedings should be granted.

Respectfully submitted,
**BENEDICT AND ALTMAN**

By:/s/Philip Nettl
PHILIP NETTL

DATED: May 22, 2018

# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARIM ARZADI, JOWORISAK & ASSOCIATES, LLC, f/k/a/ ARZADI, JOWORISAK & ASSOCIATES and LAW OFFICES OF KARIM ARZADI, <br><br> Plaintiffs, <br><br> -versus- <br><br> EVANSTON INSURANCE COMPANY and MARKEL CORPORATION and ABC INSURANCE COMPANY, 1-10, <br><br> Defendants. | Civil Action No. 2:17-cv-05470 (SDW-CLW) <br><br><br> **CERTIFICATION OF PHILIP NETTL, ESQUIRE IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND A STAY** |

Philip Nettl, upon his oath, deposes and says:

1.    I am an attorney at law of the State of New Jersey and an associate of the firm Benedict and Altman, attorneys for the Plaintiffs, Karim Arzadi, Joworisak & Associates, LLC, f/k/a/ Arzadi, Joworisak & Associates and Law Offices of Karim Arzadi (collectively "Plaintiffs").

2.    I make this Affidavit in support of Plaintiffs' motion for a protective order and a stay.

3.    Annexed hereto as Exhibit "A" is a true copy of this Court's opinion dated February 7, 2018.

4.    Annexed hereto as Exhibit "B" is a true copy of the New Jersey Superior Court website page indicating the Discovery End

Date for the case of *Allstate Insurance Company of New Jersey, et al. v. Bandy, et al.*, Docket No. OCN-L-19-17.

5.    Annexed hereto as Exhibit "C" is a true copy of pertinent policy language from the professional liability policy in issue in this lawsuit.

6.    Annexed hereto as Exhibit "D" is a true copy of the pertinent portion of a coverage position letter from Defendant, Evanston, to Plaintiffs' counsel dated June 30, 2017.

      I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


                                        */s/Philip Nettl*
                                        PHILIP NETTL

Dated May 22, 2018

# EXHIBIT "A"

<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARIM ARZADI, JOWORISAK & ASSOCIATES, LLC, f/k/a ARZADI, JOWORISAK & ASSOCIATES and LAW OFFICES OF KARIM ARZADI,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>EVANSTON INSURANCE COMPANY, and ABC INSURANCE COMPANY, 1-10,<br><br>　　　　　Defendants. | Civil Action No. 2:17-CV-5470-SDW-CLW<br><br><br>OPINION<br><br><br><br>February 7, 2018 |

**WIGENTON**, District Judge.

Before this Court is Defendant Evanston Insurance Company's Motion for Partial Summary Judgment and Plaintiffs Karim Arzadi, Joworisak & Associates, LLC, f/k/a Arzadi, Joworisak & Associates, and the Law Offices of Karim Arzadi's Cross-Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **GRANTS** Plaintiffs' Motion and **DENIES** Defendant's Motion.

## I.　　BACKGROUND AND PROCEDURAL HISTORY

The material facts of this case are not in dispute. Plaintiff, Karim Arzadi ("Arzadi"), is an attorney licensed to practice in the State of New Jersey who maintains an office in Perth Amboy,

1

New Jersey.[1] To cover potential liability arising from his practice, Arzadi secured a Professional Insurance Liability Policy Number LA808257 (the "Policy")[2] from Defendant Evanston Insurance Company ("Defendant" or "Evanston").[3] The Policy is a duty to defend policy on a claims made basis for the period of May 23, 2016 to May 23, 2017.[4]

On or about January 3, 2017, Plaintiffs Arzadi and Joworisak & Associates, LLC were named as party-defendants in *Allstate of New Jersey, et al., v. Bandy, et al.*, Docket No.: OCN-L-19-17 ("Allstate suit"). Plaintiffs are alleged to have "engaged in a continuing fraudulent scheme that is designed to defraud the Allstate Plaintiffs . . . by inducing the payment of PIP [personal injury protection] healthcare benefits . . . pursuant to an unlawful practice . . . ." (Allstate suit ¶ 677.) On or about March 9, 2017, Arzadi submitted a claim to Evanston seeking a defense and indemnification in the Allstate suit, pursuant to the Policy's reporting requirement. (Affidavit of Philip Nettl dated Oct. 20, 2017 ("Nettl Aff."), ECF No. 14-5, ¶ 13, Ex. J.)

On June 20, 2017, Plaintiffs instituted this action in the Superior Court of New Jersey, Law Division, Middlesex County, Docket No.: MID-L-003703-17, seeking a declaratory judgment that Evanston has a duty to defend or indemnify Plaintiffs in the Allstate suit. (Nettl Aff. ¶ 3, Ex A.) On June 30, 2017, for the first time, Evanston's counsel issued a letter to Plaintiffs disclaiming coverage in the Allstate suit because Plaintiffs are alleged to have engaged in fraudulent conduct which "does not fall under the Policy's definition of Professional Legal Services," and because

---

[1] Arzadi was the principal of Plaintiff Law Offices of Karim Arzadi. Plaintiff Joworisak & Associates, LLC, was a professional limited liability company, formerly known as Arzadi, Joworisak & Associates.

[2] ECF No. 15-4 ¶ 9, Ex 8.

[3] Defendant Markel Corporation was initially a party to this action, but was dismissed from this suit by Stipulation and Order on September 25, 2017. (ECF No. 13.)

[4] The Policy provides liability coverage on a claims made basis in the amount of $3,000,000.00 for each claim and $3,000,000.00 in the aggregate, subject to a $25,000.00 deductible for each claim. (Complaint ¶ 4, ECF No. 1-1.)

"the Claim is not made against them in their insured capacity." (Nettl Aff. ¶ 5, Ex. C at 9.) On

July 26, 2017, Defendant removed the case to this Court. (ECF No. 1.) On October 20, 2017, the

parties filed Cross-Motions for Partial Summary Judgment on the duty to defend issue. (ECF.

Nos. 14-15).[5]

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party must show that if the evidentiary material of record were reduced to

admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party

meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts

showing a genuine issue for trial. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). If the

nonmoving party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party

is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

"In considering a motion for summary judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence; instead, the non-moving party's

---

[5] The parties filed oppositions on November 10, 2017, and replies on December 1, 2017. (ECF Nos. 16-17, 20-21.) Due to a submission error, Defendant refiled its Reply Brief on December 4, 2017. (ECF No. 22.)

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

This governing standard does not change when the parties file cross-motions for summary judgment. *Hartford Cas. Ins. Co. v. Peerless Ins. Co.*, No. 10-6235, 2016 U.S. Dist. LEXIS 136491, at *14 (D.N.J. Sept. 30, 2016). Indeed, "[t]he court must consider the motions independently, and view the evidence on each motion in the light most favorable to the party opposing the motion." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (citations omitted).[6]

## III.    DISCUSSION

An insurance policy is a form of contract, and its interpretation is a question of law for the court. *Papalia*, 2017 U.S. Dist. LEXIS 121520, at *17; *Sierfeld v. Sierfeld*, 997 A.2d 1028 (N.J. App. Div. 2010) (noting that interpretation of insurance contract is question of law). The insured has the burden "to demonstrate that the claim at issue is within the scope of the policy." *Papalia*, 2017 U.S. Dist. LEXIS 121520, at *17 (citing *Polarome Int'l, Inc. v. Greenwich Ins. Co.*, 961 A.2d 29, 49 (N.J. App. Div. 2008)).  In the first instance, the court interprets the language of an insurance policy according to its plain and ordinary meaning. *Id.* (citing *Memorial Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 525 (N.J. 2012). Any ambiguity in a term of the policy is resolved in favor of the insured. *Memorial Props., LLC*, 46 A.3d at 525; *see also Butler v. Bonner & Barnewall, Inc.*, 267 A.2d 527, 532 (N.J. 1970) ("As to insurance contracts specifically, the general rule of construction [is] that if the controlling language of a policy will support two meanings, one

---

[6] Because this action is based on diversity jurisdiction, this Court will apply the substantive laws of the forum state, New Jersey. *Papalia v. Arch Ins. Co.*, No. 15-2856, 2017 U.S. Dist. LEXIS 121520, at *16 (D.N.J. Aug. 1, 2017). The Parties do not dispute that New Jersey law should apply. (ECF Nos. 14-3 at 1-2; 15-2 at 10 n.3.)

favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied.") (internal quotations omitted).

### A. Duty to Defend

Where the insurance policy states a duty to defend, the "insurer is contractually obliged to provide the insured with a defense against all actions covered by the insurance policy." *Abouzaid v. Mansard Gardens Assocs., LLC*, 23 A.3d 338, 346 (N.J. 2011). Thus, when a complaint is filed against the insured alleging a potentially covered claim, the insurer's duty to defend is triggered. *Papalia*, 2017 U.S. Dist. LEXIS 121520, at *18. As the Third Circuit has noted,

> The duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy. Moreover, if an insurer seeks to avoid its duty to defend under the policy on the basis of an exclusion to that policy, the insurer bears the burden to prove the applicability of that exclusion.

*Clarendon Nat'l Ins. Co. v. Padgett*, No. 06-642, 2007 U.S. Dist. LEXIS 9878, at *6 (E.D. Pa. Feb. 5, 2007) (quoting *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985)).

As an initial matter, the parties do not dispute that the Policy is valid and the allegations arising from the Allstate suit were received during the Policy Period.[7] Additionally, this Court is satisfied that Plaintiffs complied with the reporting requirement under the Policy by submitting a claim to Evanston on or about March 9, 2017. (Nettl Aff. ¶ 13, Ex. J.)

#### 1. Scope of Claim

In determining whether the Defendant has a duty to defend, this Court first considers whether the fraudulent conduct alleged in the Allstate suit against Plaintiffs falls within the scope of a covered Claim under the Policy. Under the Policy, Defendant must defend Plaintiffs against

---

[7] The Policy retroactively covers full prior acts. (Policy at 1 of 2.) Thus, claims relating to events that occurred before the Policy was entered are also covered, including the allegations contained in the Allstate suit.

claims alleging a "Wrongful Act arising out of Professional Legal Services." (Policy at 1 of 2.) The Policy defines a "Wrongful Act" as "any act . . . by the Insured in rendering . . . Professional Legal Services for others." (Policy at 3 of 11.)  The Policy defines Professional Legal Services as "services rendered by an Insured (1) as a lawyer . . . provided that such services are connected with and incidental to the Insured's profession as a lawyer and are performed by or on behalf of the Named Insured or any Predecessor Firm . . . ."  *Id*.

Plaintiffs are named as defendants in eight of the sixteen counts in the Allstate suit. The Allstate suit alleges, *inter alia*, that Plaintiffs violated Section 4(e) of the New Jersey Insurance Fraud Prevention Action, N.J. Stat. Ann. § 17:33A-1, *et seq.* ("IFPA"), by participating in a "Kickback Scheme" while representing clients in personal injury matters. (Allstate suit ¶ 49.)[8] Defendant argues that these allegations "serve merely as contextual background for the actual claims at issue," i.e. an insurance fraud conspiracy, which does not qualify as a professional legal service. (ECF No. 15-2 at 6.) Defendant also contends that Plaintiffs should be barred from coverage because the underlying claims in the Allstate suit do not allege that Plaintiffs were *negligent* in providing legal services. *Id*. These arguments fail for two reasons.

First, the Allstate suit contains allegations that Arzadi advised clients how to proceed with their personal injury claims, which falls squarely within the Policy's definition of Professional Legal Services. *See Navigators Specialty Ins. Co. v. Scarinci & Hollenbeck, LLC*, No. 09-4317, 2010 U.S. Dist. LEXIS 47124, at *27-28 (D.N.J. May 12, 2010) ("In determining whether particular acts constitute professional services, the Third Circuit has held that the important question is simply whether a substantial nexus exists between the context in which the acts

---

[8] The alleged kickback scheme was in the form of referral exchanges which involved Plaintiffs referring personal injury clients to certain chiropractic clinics for treatment in exchange for a reciprocal referral for representation in bringing a personal injury claim. (Allstate suit ¶ 142.)

complained of occurred and the professional services sought.") (internal quotations omitted). The acts complained of—advising his clients that "they had valid bodily injury claims," "encouraging them to continue to undergo [unnecessary] treatment," or making referrals for treatment—are acts that allegedly occurred in the context of Arzadi's representation of his clients. (*See, e.g.*, Allstate suit ¶¶ 693-694, 739-740, 809-810.) There is clearly a substantial nexus between the representation and the professional services his clients sought. *Navigators Specialty Ins. Co.*, 2010 U.S. Dist. LEXIS 47124, at *28. Indeed, if Arzadi had not been acting as an attorney, he would not have been able to commit the alleged fraudulent acts.

Second, in interpreting the Policy according to its plain and ordinary meaning, it does not limit coverage to negligent acts only. Indeed, the language is clear, the Policy provides that it will cover *any* act as long as it is connected to the Insured's profession as a lawyer. Providing legal advice, as Arzadi is alleged to have done, is certainly connected to his practice as a lawyer. *Shapiro v. Rinaldi*, No. A-1753-14T4, 2016 N.J. Super. Unpub. LEXIS 596, at *11 (N.J. App. Div. Mar. 18, 2016) (citing N.J. Comm. on Unauth. Pract. Op. 41 (Oct. 25, 2004) ("[T]he practice of law includes . . . the giving of legal advice with regard to any document or matter."). Therefore, this Court finds that the allegations contained in the Allstate suit generally fall within the scope of a covered Claim under the Policy.

### 2. "Prior Knowledge" Condition

Notwithstanding the above, this Court must also determine whether Plaintiffs complied with the conditions set forth in the Policy, and whether there are any exclusions that bar coverage. Here, the Policy contains a "prior knowledge" condition that precludes coverage if prior to the effective date of the Policy, May 23, 2016, Plaintiffs had knowledge of the Wrongful Act "which would lead a reasonable person in [Plaintiffs'] position to conclude that a Claim was likely."

(Policy at 1 of 11.) Defendant argues that Plaintiffs had prior knowledge of the conduct alleged in the Allstate suit based on two prior lawsuits; however, these arguments are not persuasive. (ECF No. 15-2 at 17-18.) With respect to the first suit, *Allstate New Jersey Ins. Co. v. Lajara*, Plaintiffs were not a party to that litigation. 117 A.3d 1221 (N.J. 2015); (ECF No. 14-3 at 16-17.) Thus, prior knowledge cannot be imputed to Plaintiffs. With respect to the second lawsuit, *Alvarez v. Arzadi*, *et al.*, that litigation was filed as a wrongful termination suit under the Conscientious Employee Protection Act ("CEPA"). (ECF No. 14-3 at 18-19.) Because the underlying allegations in the *Alvarez* suit are connected to employment related claims, Plaintiffs conceivably may not have had prior knowledge that those allegations were likely to form a basis for the insurance fraud allegations contained in the Allstate suit. As such, this Court finds that Plaintiffs are not precluded from coverage under the "prior knowledge" condition.

### 3. Policy Exclusions

Next, this Court considers whether Policy Exclusions A or F bar coverage. The Policy defines these exclusions as follows:

> A. any Claim based upon or arising out of a contract or agreement for, or any other right relating to, payment of or division of any fees or fee apportionment between the Insured and any lawyer . . .

> F. any Claim based upon, arising out of, or in any way involving any deliberately criminal, dishonest or fraudulent act, error or omission if a judgment or other final adjudication adverse to the Insured establishes that the Insured committed a criminal, dishonest or fraudulent act, error or omission pertaining to any Insured under this policy shall not be imputed to any other Insured under this policy for the purpose of determining the applicability of this exclusion.

(Policy at 3 of 11.)

Defendant argues that under Exclusion A, Plaintiffs are barred from coverage because the Allstate suit includes allegations related to a division of fees or fee apportionment arrangement.

(ECF No. 15-2 at 19.) However, Defendant has not presented any evidence to this Court to support its assertion. The Allstate suit contains allegations only. Without more, Defendant has not met its burden of "prov[ing] the applicability of th[is] exclusion." *Padgett*, 2007 U.S. Dist. LEXIS 9878, at *6 (quoting *Linn*, 766 F.2d at 760). Therefore, this Court finds that Exclusion A does not bar Plaintiffs from coverage.

Defendant argues that under Exclusion F (the Fraudulent Acts Exclusion), Plaintiffs are barred from coverage because the Allstate suit alleges that Plaintiffs "committed intentional, willful, dishonest and fraudulent acts." (ECF No. 15-2 at 20.) While it is true that the Allstate suit contains fraud allegations, Exclusion F *only* bars coverage for fraudulent acts *if* a final judgment or adjudication is entered against Plaintiffs. The Allstate suit is in the preliminary stages of litigation and the underlying allegations have not been substantiated by any court. Therefore, this Court finds that Exclusion F does not bar Plaintiffs from coverage.

### B. Indemnity

"Unlike the duty to defend, which arises whenever the claims asserted by the injured party potentially come within the coverage of the policy, the duty to indemnify is triggered only when the insured is determined to be liable for damages within the policy's coverage." *Padgett*, 2007 U.S. Dist. LEXIS 9878, at *16 (quoting *Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 107 F. Supp. 2d 647, 650 (E.D. Pa. 2000)). Because the Allstate suit is pending, this Court finds that it is premature to make a determination on the issue of whether indemnification applies.

## IV. CONCLUSION

For the reasons set forth above, this Court **GRANTS** Plaintiffs' Motion for Summary Judgement as to Defendant's duty to defend and **DENIES** Defendant's Motion Summary Judgment. An Order consistent with this Opinion follows.

s/ *Susan D. Wigenton*

9

**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

Orig:     Clerk
cc:       Hon. Cathy L. Waldor, U.S.M.J.
          Parties

# EXHIBIT "B"



# Superior Court of New Jersey
# Discovery Case Detail

| | | | | | |
|---|---|---|---|---|---|
| **Venue:** | OCEAN | **Docket Number:** | L-19-17 | **Court:** | Civil - Law |
| **Discovery End Date:** | 3/31/20 | **Team ID:** | 2 | **Team Phone Number:** | 7329294771 |
| **Track Number:** | 4 | **Judge Name:** | | **First Answer Filed date:** | 3/15/17 12:00 AM |
| **Case File Date:** | 1/3/17 12:00 AM | **Proof of Service:** | 1/19/17 12:00 AM | **Stay Code:** | |
| **Caption:** | NJ DEPARTMENT BANKING & INSURANCE VS BANDY | | | | |

| Party Name | Party Type |
|---|---|
| NJ DEPARTMENT BANKING & INS | PF |
| NJ DEPARTMENT BANKING & INS | PF |
| ANHUAR BANDY | DF |
| BADOLATORICHARDJ | PF |
| BADOLATORICHARDJ | PF |
| ALLSTATE NJ INSURANCE CO | PF |
| ALLSTATE NJ INSURANCE CO | PF |
| ALLSTATE INSURANCECO | PF |
| ALLSTATE INSURANCECO | PF |
| ALLSTATE INDEMNITYCO | PF |
| ALLSTATE INDEMNITYCO | PF |
| ALLSTATE PROPERTY &CASUALTY | PF |
| ALLSTATE PROPERTY &CASUALTY | PF |
| ALLSTATE NJ PROPERTY& CASAULTY | PF |
| ALLSTATE NJ PROPERTY& CASAULTY | PF |
| ALLSTATE FIRE & CASUALTY INS | PF |
| ALLSTATE FIRE & CASUALTY INS | PF |
| ENCOMPASS INSURANCECO NJ | PF |
| ENCOMPASS INSURANCECO NJ | PF |
| ENCOMPASS PROPERTY &CASUALTY | PF |
| ENCOMPASS PROPERTY &CASUALTY | PF |
| ANHUAR BANDY | DF |
| KARIM BANDY | DF |
| FORMISANO DCEDWARDP | DF |
| LOUIS S. BROWN DC | DF |
| MONICA JOHNSON DC | DF |
| GERARD H. ROTH DC | DF |
| RICHARD STARK JR DC | DF |
| SERGEY LIPSHITZ LAC | DF |
| IRINA ROYTMAN LAC | DF |
| ALEXANDRA GALLEGOS | DF |
| DAVID WALKER ESQ | DF |

| | |
|---|---|
| KARIM ARZADI ESQ | DF |
| KARIM ARZADI ESQ | DF |
| JOWOEISAK & ASSOCIATES LLC | DF |
| JOWOEISAK & ASSOCIATES LLC | DF |
| EUGENE S. WISHNIC ESQ | DF |
| WISHNIC PCEUGENES | DF |
| BRAD S. SCHENERMAN ESQ | DF |
| BRAD S SCHENERMAN ESQ LLC | DF |
| YANKOWITZ & SCHENERMAN LLC | DF |
| CHIROPRACTIC SPINE CENTER LLC | DF |
| ECLIPSE CHIROPRACTICCENTER | DF |
| ELMORA WELLNESS CENTER LLC | DF |
| GOOD HEALTH CENTERLLC | DF |
| LAKEWOOD CHIROPRACTIC CENTER | DF |
| NJ CENTURY CHIROPRACTIC CENTER | DF |
| PENNSAUKEN CHIROPRACTIC CENTER | DF |
| PLATINUM CHIROPRACTIC LLC | DF |
| TRUE HEALING & WELLNESS CENTER | DF |
| WELLSPRING REHABILITATION CENT | DF |
| MILLENIUM CHIROPRACTIC LLC | DF |
| RIOTTO FAMILY CHIROPRACTIC LLC | DF |
| RIOTTO DCANTHONYM | DF |
| BAER DCMICHAELM | DF |
| CHI ACUPUNCTURE LLC | DF |
| KEKK MARKETING GROUPLLC | DF |
| PRECISION MANAGEMENTASSOC LLC | DF |
| FIRST CHOICE MANAGEMENT LLC | DF |
| KARKIS LLC | DF |
| VIP MANAGEMENT SERVICES | DF |
| PALMER HILLS HOLDINGS LLC | DF |
| SORFAM PARTNERSHIP LP | DF |
| KARLALY LLC | DF |
| 243 LIVINGSTON AVEASSOC | DF |
| GOLDEN FLOWER ACUPUNCTURE PC | DF |
| GOLDEN LOTUS ACUPUNCTURE PC | DF |
| MLS MEDICAL GROUP | DF |
| SCHWARTZ DOMARKL | DF |
| LISA M. EMBER | DF |
| PERRY SCOTT | DF |
| BRETT LIQUORI | DF |
| KIMBERLY GILL | DF |
| MLS MEDICAL GROUP LLC | DF |
| MSAR LLC | DF |
| KENNETH M. GROSS DC | DF |
| MICHELLE DUBNOFF DC | DF |
| CHRISTOPH MONTANA DC | DF |
| FERNANDO BARRESE DC | DF |

| | |
|---|---|
| OLEG GORODETSKY | DF |
| CHIROPRACTIC CENTERJERSEY CIT | DF |
| CHIROPRACTIC CENTERNEWARK | DF |
| CHIROPRACTIC CENTERELIZABETH | DF |
| WALLINGTON CHIROPRACTIC CENTER | DF |
| MASSIMO REHABILTATION CENTER | DF |
| MASSIMO CHIROPRACTICLLC | DF |
| HANOVER REHABILITATION CENTER | DF |
| HANOVER CHIROPRACTICLLC | DF |
| ESTEFANIA FRIAS | DF |
| LILIAN FRIAS | DF |
| CESAR HUAMAN | DF |
| RENE LACOTERA | DF |
| ALBERT L. HUGHES | DF |
| ANALI G. RIVERA | DF |
| MARTA A. PEREZ | DF |
| BERNARDO NEIMAN | DF |
| SERGIO MORENO | DF |
| JOHN DOE 1-50 | DF |
| JOHN ROE 1-50 | DF |
| ABC CORP 1-50 | DF |
| XYZ PC 1-50 | DF |
| NEW CENTURY CHRIOPRACTIC CENTE | DF |
| QUALITY MANAGEMENT SERVICES LL | DF |
| MLS EDX MEDICAL GROUP LLC | DF |
| LIBERTY CHIROPRACTICCNTR LLC | DF |
| CHIROPRACTIC PHYSICIANS GROUP | DF |
| CHARLES NISIVOCCIA NONPTY | OR |

# EXHIBIT "C"

3.  the injury or damage which has or may result from such Wrongful Act or Personal Injury;

4.  the identity of any persons and/or organization subject to such injury and/or damage; and

5.  the circumstances by which the Insured first became aware of such Wrongful Act or Personal Injury.

C.  **Assistance and Cooperation of the Insured:**  The Insured shall cooperate with the Company and upon the Company's request, the Insured shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without cost to the Company other than expense reimbursement provided under Section Supplementary Payments. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have.

D.  **False or Fraudulent Claims:**  If any Insured shall commit fraud in proffering any Claim, this insurance shall become void from the date such fraudulent Claim is proffered.

## EXTENDED REPORTING PERIOD

A.  If the Named Insured nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., or if the Company nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at that percentage stated in Item 8. of the Declarations of the annual premium for the Policy Period, to extend the coverage granted under this policy, to Claims first made against the Insureds during: (1) twelve (12) months; (2) twenty-four (24) months; or (3) thirty-six (36) months; as elected by the Named Insured, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any Wrongful Act or Personal Injury committed on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal. This period of months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the Retroactive Date is the same as or earlier than that stated in the Item 7. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

B.  As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid: (1) all Deductibles when due; (2) all premiums due for the Policy Period; and (3) all premium and deductibles due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement. The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with full payment for the Extended Reporting Period. If such written request and premium payment for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C.  In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

D.  The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 4. of the Declarations.

## NON-PRACTICING EXTENDED REPORTING PERIOD OPTIONS

A.  Any natural person who is a partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured who, during the Policy Period, retires or otherwise ceases the private practice of his/her profession as a lawyer shall have the right upon payment of an additional premium of:  (1) one hundred percent (100%) of the annual premium for the Policy Period divided by the total number of lawyers shown in the

# EXHIBIT "D"

Your Ref   Unknown
Our Ref    File No.: LA400691/01770-00010

**By Electronic and Certified Mail,**
**Return Receipt Requested**
Philip Nettl, Esq.
Joseph J. Benedict, Esq.
Benedict and Altman
247 Livingston Avenue
New Brunswick, New Jersey 08901

# Kennedys CMK

570 Lexington Avenue
8th Floor
New York
New York 10022
USA

T +1 212.252.0004
F +1 212.252.0444

**www.kennedyslaw.com**

646.625.3968

christina.salem@kennedyscmk.com

June 30, 2017

**Re: Allstate New Jersey Ins. Co., et al v. Bandy, et al.**
**Docket No. L19-17, Superior Court of New Jersey,**
**Law Division, Ocean County**
**Policy No.:    LA808257**
**Insured:       Law Offices of Karim Arzadi**

Dear Messrs. Nettl and Benedict:

As you know, this firm has been retained by Markel Service, Incorporated, the claims service manager for Evanston Insurance Company ("Evanston"), in connection with the above-referenced lawsuit (the "Allstate Suit" or the "Claim"). In this capacity, we write to provide Evanston's insurance coverage position under the above-referenced policy for the Claim. This letter follows up on, and incorporates by reference, all prior communications by Evanston in connection with this matter. [1]

We are directing this letter to you as the authorized representative of Karim Arzadi, Esq. ("Arzadi") and Joworisak & Associates, LLC f/k/a Arzadi, Joworisak & Associates ("Joworisak") (collectively, the "Insureds"). If you are not acting on behalf of this individual, or those entities with respect to insurance matters, please forward this correspondence to the appropriate parties and immediately advise us accordingly.

---

[1] As Evanston previously communicated to you, any perceived delay, there was none, in issuing this position letter resulted from the Insureds' delay in providing the voluminous relevant information to Evanston during its coverage investigation.

Kennedys Law LLP, a UK Limited Liability Partnership, is a partner of Kennedys CMK LLP.

*Kennedys offices, associations and cooperations:* Australia, Argentina, Belgium, Brazil, Chile, China, Colombia, Denmark, England and Wales, France, Hong Kong, India, Ireland, Italy, Mexico, New Zealand, Northern Ireland, Norway, Pakistan, Peru, Poland, Portugal, Russian Federation, Scotland, Singapore, Spain, Sweden, United Arab Emirates, United States of America.

Philip Nettl, Esq.
Joseph J. Benedict, Esq.

# Kennedys CMK

### G.  RESCISSION

The outset of the Policy provides that the Company and the Insured agree to the Policy terms in consideration of and reliance upon, among other things, "the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured." Included in Evanston's underwriting material are various Lawyers Professional Liability Insurance policy applications submitted by the Insured.

As set forth above, on October 21, 2011, Alvarez filed the Alvarez Suit against Arzadi. As alleged in the Allstate Suit, on November 28, 2011, Alvarez filed a Stipulation of dismissal without prejudice as to the 2011 Alvarez Compliant and then on or about May 16, 2012, filed a second Complaint against Arzadi and Arzadi & Associates alleging similar allegations as those contained in the 2011 Alvarez Complaint.

Arzadi's Allied World Lawyers Professional Liability Renewal Application dated April 24, 2013, which is after the filing of the second 2012 Alvarez Complaint, discloses in a Claim Supplement the Alvarez Suit. However, the initial 2011 Alvarez Complaint is not disclosed in Arzadi's: (1) December 21, 2011 Darwin National Assurance Company's ("Darwin") Lawyers Professional Liability Insurance Application and New Attorney Supplement; (2) March 28, 2012 Darwin Renewal Application; or (3) April 12, 2012 Ironshore Lawyers Professional Liability Insurance application. Additionally, despite the 2011 Alvarez Suit being dismissed without prejudice on November 28, 2011, on Arzadi's April 12, 2012 Darwin application, Arzadi answered "no" to the question of whether any of the attorneys in his firm were aware of any legal work or incidents that might reasonably be expected to lead to a claim or suit against them.

As such, Evanston reserves its rights to rescind the Policy based on any material misrepresentations set forth in applications leading to the issuance of the Policy and/or the underwriting information submitted on behalf of the Insured.

## IV.  CONCLUSION

In light of the foregoing, Evanston has no coverage obligation for the Allstate Suit. Thus, Evanston disclaims coverage for the Allstate Suit under the Policy and reserves its rights to disclaim coverage based upon the grounds set forth more fully above.

Evanston's actions in investigating, evaluating or monitoring this Claim should not be construed as constituting a waiver or other relinquishment of Evanston's right to deny coverage at a later date, nor as an admission of any obligation under the Policy. Evanston further acknowledges that any insured under the Policy likewise retains all rights. The Insured(s) are not being asked to waive or relinquish any rights under the Policy or under the law. Because Evanston is disclaiming any coverage obligation for the Allstate Suit, the Insureds may wish to consult with their own coverage counsel. Any such consultation will be at their own expense.

The foregoing statement of Evanston's position is based upon information that has been provided to Evanston to date. If you have additional information regarding this Claim, please forward it to my attention for consideration. This disclaimer of coverage is not intended to be, nor shall it be construed as, a waiver of any right or basis that Evanston may

BENEDICT AND ALTMAN
Philip Nettl Attorney ID # 200402642
247 Livingston Avenue
New Brunswick, New Jersey 08901
(732) 745-9000
Attorneys for Plaintiffs
pnettl@benedictandaltman.com

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARIM ARZADI, JOWORISAK & ASSOCIATES, LLC, f/k/a/ ARZADI, JOWORISAK & ASSOCIATES and LAW OFFICES OF KARIM ARZADI, <br><br> Plaintiffs, <br><br> -versus- <br><br> EVANSTON INSURANCE COMPANY and MARKEL CORPORATION and ABC INSURANCE COMPANY, 1-10, <br><br> Defendants. | Civil Action No. 2:17-cv-05470 (SDW-CLW) <br><br><br><br> **CERTIFICATION OF SERVICE** |

I certify that the within Notice of Motion and supporting documentation has been electronically filed via CM/ECF and one courtesy copy of same has been mailed to the Honorable Susan D. Wigenton, U.S.D.J., Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07101 on the date indicated below.

*/s/ Philip Nettl*
Philip Nettl

Dated:      May 22, 2018

# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARIM ARZADI, JOWORISAK & ASSOCIATES, LLC, f/k/a/ ARZADI, JOWORISAK & ASSOCIATES and LAW OFFICES OF KARIM ARZADI,<br><br>Plaintiffs,<br><br>-versus-<br><br>EVANSTON INSURANCE COMPANY and MARKEL CORPORATION and ABC INSURANCE COMPANY, 1-10,<br><br>Defendants. | Civil Action No. 2:17-cv-05470 (SDW-CLW)<br><br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND STAYING PROCEEDINGS** |

THIS MATTER having been opened to the Court on the Plaintiffs' motion for a Protective Order and for a Stay and the Court having read all of the papers submitted and having considered the arguments of counsel, ORDERS as follows:

1.    Plaintiffs' motion for a Protective Order and for a Stay be and hereby is GRANTED; and

2.    All further proceedings, including discovery, in this case, be and hereby are STAYED pending the outcome of the case entitled *Allstate New Jersey Insurance Company, et al. v. Bandy, et al.*, Docket No. OCN-L-19-17 (Superior Court of New Jersey, Law Division).

3.    The Defendants may not require Plaintiffs, or any of them, to submit to a Statement under Oath or Examination Under Oath.

_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:    Clerk
cc:      Hon. Cathy L. Waldor, U.S.M.J.
        Parties