Your Ref  Unknown
Our Ref  File No.: LA400691/01770-00010

**By Electronic and Certified Mail,**
**Return Receipt Requested**
Philip Nettl, Esq.
Benedict and Altman
247 Livingston Avenue
New Brunswick, New Jersey 08901

# Kennedys CMK

570 Lexington Avenue
8th Floor
New York
New York 10022
USA

T +1 212.252.0004
F +1 212.252.0444

www.kennedyslaw.com

646.625.3968

christina.salem@kennedyscmk.com

July 9, 2018

Re: *Arzadi, et al. v. Evanston Insurance Co.*
Civil Action No. 2:17-cv-05470
United States District Court, District of New Jersey
Policy No.:  LA808257
Insured:    Law Offices of Karim Arzadi

Dear Mr. Nettl:

    Evanston Insurance Company ("Evanston") has reviewed the material provided in your June 1, 2018 letter concerning the Plaintiffs' current defense counsel assignment for the lawsuit captioned *Allstate of New Jersey, et al., v. Bandy, et al.*, Docket No.: OCN-L-19-17 (the "Allstate Suit" or the "Claim"). Evanston herein responds to the information in your letter, while also providing its current insurance coverage position under the above-referenced policy for the Allstate Suit. This letter supplements, and incorporates by reference, all prior communications by Evanston in connection with this matter.

## I.    POSITION

    Evanston has set forth a detailed summary of the allegations in the Allstate Suit in its letter dated June 30, 2017 to Karim Arzadi, Esq. ("Arzadi") and the Law Offices of Karim Arzadi ("Arzadi Law") (collectively, the "Insureds"), and in its prior briefings in the above-referenced insurance coverage lawsuit venued in the United States District Court for the District of New Jersey before the Honorable Susan D. Wigenton (the "Coverage DJ"). Similarly, Evanston has already detailed the contents of Lawyers Professional Liability Insurance Policy Number LA808257 issued to Arzadi Law for the May 23, 2016 to May 23, 2017 period (the "Policy") in those prior papers. For brevity, the factual background regarding the Allstate Suit and the terms of the Policy recited in those papers are fully incorporated herein.

    The Court in the Coverage DJ has granted the Plaintiffs' Motion for Summary Judgment as to Evanston's duty to defend the Plaintiffs in the Allstate Suit. As such, and to the extent

Kennedys Law LLP, a UK Limited Liability Partnership, is a partner of Kennedys CMK LLP.

*Kennedys offices, associations and cooperations:* Australia, Argentina, Belgium, Brazil, Chile, China, Colombia, Denmark, England and Wales, France, Hong Kong, India, Ireland, Italy, Mexico, New Zealand, Northern Ireland, Norway, Pakistan, Peru, Poland, Portugal, Russian Federation, Scotland, Singapore, Spain, Sweden, United Arab Emirates, United States of America.

it is required to under applicable New Jersey law on this issue, Evanston will fulfill its obligation to defend the Plaintiffs in the Allstate Suit. Evanston sets forth the applicable Policy provisions relevant to the handling of the Plaintiffs' defense under the Policy and its position in connection therewith.

### A. INSURED STATUS

As Evanston's June 30 2017 letter provides, in addition to Arzadi Law, any lawyer who is a past, present, or future partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of Arzadi Law will also potentially qualify as an insured under the Policy. Coverage for any Insured under the Policy is solely for Professional Legal Services, defined by the Policy to mean, in relevant part, services rendered by an Insured as a lawyer, provided that such services are connected with and incidental to the Insured's profession as a lawyer and are performed by or on behalf of the Named Insured or any Predecessor Firm.

At the outset, Arzadi and Joworisak & Associates, LLC f/k/a Arzadi, Joworisak & Associates, LLC ("Joworisak") (collectively, the "Arzadi Defendants") appear to qualify for Insured status under the Policy. However, if it is ultimately determined in the Allstate Suit that the allegations asserted against the Arzadi Defendants do not satisfy the Policy's definition of Professional Legal Services, there would be no coverage under the Policy for the Allstate Suit because the Claim is not made against them in their insured capacity.

Additionally, under the Policy, any Predecessor Firm will also potentially qualify for Insured status. The term Predecessor Firm is defined under the Policy to mean any legal entity which was engaged in the practice of law whose financial assets and liabilities the Named Insured is the majority successor in interest to, and which is designated in the application as a Predecessor Firm.

In the Allstate Suit, it is alleged that Arzadi operated a personal injury practice under the trade names of Arzadi Law and Arzadi and Associates. The suit further alleges that Arzadi formed Arzadi, Joworisak & Associates, LLC and that Arzadi Law is the managing member of Joworisak & Associates with a 99% membership interest and that Donald T. Joworisak and Associates, LLC has a 1% interest.

The policy applications in Evanston's possession identify Joworisak as a Predecessor Firm to Arzadi Law. Evanston continues to reserve its rights to disclaim coverage to Joworisak for the Allstate Suit to the extent that Arzadi Law is not a majority successor in interest of Joworisak's financial assets and liabilities and/or Joworisak does not otherwise qualify as a Predecessor Firm under the terms of the Policy.

### B. THE INSURING AGREEMENT

#### 1. Timing of the Claim

The Policy's Insuring Agreement states, in relevant part, that the Company shall pay on behalf of the Insured all sums in excess of the Deductible which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period and reported to the Company pursuant to Section Claims A., Reporting Provision. The Policy further provides that more than one Claim arising out of single Wrongful

Act or Personal Injury or a series of related Wrongful Acts or Personal Injuries shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act is made.

The Allstate Suit Complaint highlights a 2011 lawsuit filed by Milagros Alvarez, Esq. ("Alvarez"), an attorney formerly employed by Arzadi, against Arzadi and his firm in the Superior Court of New Jersey, Middlesex County, Docket No. Mid-L-7469-11 (the "Alvarez Suit"). The Alvarez Suit was filed on October 21, 2011, which is prior to the inception date of the Policy. The Alvarez Suit contains allegations that are substantially similar to, and overlap with the allegations made in the Allstate Suit. Namely, that Arzadi and his firm improperly signed up clients at chiropractor offices through the use of runners and that Arzadi was informed that his firm's use of runners to gain client referrals gave rise to ethical violations.

To the extent that the Alvarez Suit and the Allstate Suit arise out of a single Wrongful Act, or a series of related Wrongful Acts, both suits shall be considered a single Claim and shall be deemed first made on the date that the Alvarez Suit was filed on October 21, 2011. Therefore, to the extent both suits are considered a single Claim, then coverage for the Allstate Suit is barred under the Policy as that matter is not considered a Claim first made against an Insured and reported to Evanston during the Policy Period as required under the terms of the Policy's Insuring Agreement provision. Therefore, Evanston continues to reserve its rights accordingly with respect to when the Claim was first made.

### 2.  Wrongful Act Arising out of Professional Legal Services

The Policy's Insuring Agreement is also only potentially triggered by reason of a Wrongful Act arising out of Professional Legal Services. Under the Policy, Wrongful Act means any act, error or omission by the Insured in rendering or failing to render Professional Legal Services for others. Professional Legal Services under the Policy means, in relevant part, services rendered by an Insured as a lawyer, provided that such services are connected with and incidental to the Insured's profession as a lawyer and are performed by or on behalf of the Named Insured or any Predecessor Firm.

In summary, the Allstate Suit alleges that the Arzadi Defendants obtained referrals of the Allstate Claimants and other personal injury clients by paying kickbacks directly to runners and/or indirectly through payments to others. The suit goes on to assert that the alleged runners, acting in concert with the Arzadi Defendants, used police reports to identify individuals who had been involved in automobile accidents, and contacted them in person to solicit them to undergo treatment with one or more of the clinics controlled by the Bandy Defendants and to engage the Arzadi Defendants or the other Law Firm Defendants in furtherance of the Bandy Runner Scheme and the Bandy Attorney Kickback Scheme.

The Allstate Suit further alleges that the Arzadi Defendants knowingly obtained referrals of personal injury clients, including the Allstate Claimants, who were recruited by the alleged runners and that in exchange for these referrals and for being able to sign up clients at the defendant clinics, the Arzadi Defendants gave "in kind" kickbacks in the form of reciprocal referrals to certain of the Defendants. It is alleged that the Arzadi Defendants knew that the Bandy Defendants paid runners to recruit patients to treat at the clinics and knew that the client referrals that they received were the result of payments to runners for

soliciting people to make claims for PIP benefits and for personal injury benefits in violation of the New Jersey law. As such, the Allstate Suit alleges that the Arzadi Defendants were part of an illegal conspiracy and kickback scheme.

To the extent that the alleged acts of the Arzadi Defendants do not qualify as Wrongful Acts arising out of Professional Legal Services as defined by the Policy, there is no coverage for the Allstate Suit under the Policy. Therefore, Evanston reserves its rights to disclaim coverage in the event the Insuring Agreement provisions of the Policy are not satisfied because the Claim asserted against the Arzadi Defendants is not made by reason of a Wrongful Act arising out of Professional Legal Services.

3.  **Prior Knowledge**

The Insuring Agreement further provides in relevant part that coverage under the Policy is only potentially triggered if, prior to the effective date of the Policy, no Insured had any knowledge of the Wrongful Act at issue or any fact, circumstance, situation or incident which would lead a reasonable person in that Insured's position to conclude that a Claim was likely.

The Allstate Suit states that on October 21, 2011, the Alvarez Suit was filed against Arzadi, wherein Alvarez, a former employee of Arzadi, alleged that Arzadi wrongfully received referrals from runners and signed-up clients at one or more of the same chiropractor's offices at issue in the Allstate Suit. That suit specifically alleges that Arzadi, while employed at his law firm, violated the rules of professional conduct and was advised of possible ethics violations in retaining clients from a chiropractor's office through the use of runners. Certifications filed in the Alvarez Suit indicate that Alvarez and/or other former employees confronted Arzadi about his use of runners to secure client referrals as being unethical, improper, and contrary to the accepted standards in the practice of law. Those former employees also certified that they advised Arzadi that they did not want to lose their licenses to practice law because of Arzadi's use of runners.

The Allstate Suit further alleges that Arzadi's involvement with runners who unlawfully owned or controlled chiropractic clinics was also implicated in the matter styled <u>Allstate, et al. v. Gregorio Lajara, et al.</u>, Docket No. UNN-L-4091-08 (the "Lajara Suit"). According to the allegations in the Allstate Suit, Gregorio Lajara ("Lajara") opened and operated various chiropractic clinics in the same building where the Arzadi Defendants maintained a personal injury practice. It is alleged that Arzadi knew that the chiropractors were owners on paper only and that Lajara was the *de facto* owner of the clinics and controlled where their patients were referred for treatment. It is also alleged that other individuals testified that Arzadi participated in kickbacks arrangements in exchange for referrals of clients.

If it is determined that the Allstate Suit implicates a Wrongful Act arising out of Professional Legal Services, as those terms are defined under the Policy, coverage would be barred under the Policy to the extent that an Insured had knowledge of the Wrongful Act at issue in the Allstate Suit, or, at a minimum, of any fact, circumstance, situation or incident which would lead a reasonable person in the Insured's position to conclude that a Claim was likely. For this reason, Evanston reserves its rights to disclaim coverage for the Allstate Suit under the terms of the prior knowledge conditions of the Insuring Agreement provision.

### 4. Damages

The Policy is only triggered with respect to covered Damages, which is defined to mean the monetary portion of any judgment, award or settlement. Excluded from the definition of Damages are punitive, exemplary or treble damages, taxes, criminal or civil fines, attorneys' fees of a party other than an Insured, or other penalties imposed by law, sanctions, uninsurable matters and the return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services or goods. The Allstate Suit seeks uncovered damages in the form of declaratory judgments, disgorgement and reimbursement of benefits/fees paid, civil penalties, treble and punitive damages and attorneys' fees. Therefore, Evanston continues to disclaim any coverage obligation with respect to these forms of uncovered Damages under the Policy.

### C. EXCLUSIONS

#### 1. Exclusion A

Under Exclusion A, the Policy does not apply to any Claim based upon or arising out of a contract or agreement for, or any other right relating to, payment of or division of any fees or fee apportionment between the Insured and any lawyer. The Allstate Suit is replete with allegations that the Law Firm Defendants, including the Arzadi Defendants, participated in the Bandy Attorney Kickback Scheme by knowingly engaging in conduct that violated the New Jersey Insurance Fraud Prevention Act, including by making or receiving client referrals in exchange for kickbacks directly or indirectly in the form of money. Based on these allegations, Evanston continues to reserve its right to disclaim coverage under Exclusion A to the extent the allegations in the Allstate Suit are based upon or arise out of a contract or agreement for, or any other right relating to, payment of or division of any fees or fee apportionment between the Insured and any lawyer.

#### 2. Exclusion F

Under Exclusion F, the Policy does not apply to any Claim based upon, arising out of, or in any way involving any deliberately criminal, dishonest or fraudulent act, error or omission if a judgment or other final adjudication adverse to the Insured establishes that the Insured committed a criminal, dishonest or fraudulent act, error or omission.

The Allstate Suit is replete with allegations that the Arzadi Defendants committed intentional, willful, dishonest and fraudulent acts and violations of statutes and regulations in connection with the Bandy Runner Scheme and the Bandy Attorney Kickback Scheme. Consequently, Exclusion F serves as a basis for Evanston to disclaim coverage should a judgment or other final adjudication establish that these barred acts were committed. In this regard, Evanston continues to reserve its rights with respect to the application of Exclusion F.

### D. CLAIM REPORTING PROVISION

Under the Policy's "Claim Reporting Provision," the Insured shall give to the Company written notice as stated in Item 10. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period. That provision further provides that in the event suit is brought against the Insured, the Insured shall immediately forward to Markel

Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

The Allstate Suit was filed on January 3, 2017 and the Arzadi Defendants were served with that suit on or about January 4, 2017. Evanston and/or Markel Service, Incorporated did not receive notice of the Allstate Suit until on or about March 9, 2017. Therefore, Evanston continues to reserve its rights to disclaim coverage for the Allstate Suit to the extent that the terms of the Policy's Claim Reporting Provision were breached and/or not fully satisfied.

E.  OTHER INSURANCE AND DEDUCTIBLE OBLIGATION

The "Other Insurance" provision contained in the Policy provides that the Policy shall be in excess of the deductible and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in the Policy.

The Policy provides that any payment made by Evanston is in excess of the $25,000 per Claim Deductible. Thus, the Insured must first satisfy the $25,000 Deductible obligation before Evanston is to make any payment under the Policy.

Under the section of the Policy entitled "Consent to Settlements," the Policy further provides that any costs and expenses incurred by the Insured prior to the Insured giving written notice of the Claim to the Company shall be borne by the Insured and will not constitute satisfaction of the Deductible. As stated, Evanston received notice of the Allstate Suit on or about March 9, 2017. Therefore, any costs and expenses incurred by the Insureds prior to March 9, 2017 shall be the Insured's responsibility to bear and will not constitute satisfaction of the Deductible.

Also, other insurance may be available to the Insureds with respect to the Allstate Suit. We ask that you provide us with copies of all insurance policies under which you have tendered the Allstate Suit, together with any correspondence with the insurers that issued those policies. Evanston continues to reserve its rights under the Policy for the Allstate Suit, based upon the Policy's "Other Insurance" provision.

F.  THE INSUREDS' DUTY TO ASSIST AND COOPERATE WITH EVANSTON

The Policy provides as follows:

> C.  **Assistance and Cooperation of the Insured:** The Insured shall cooperate with the Company and upon the Company's request, the Insured shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trial; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the

Philip Nettl, Esq.                                                                                          **Kennedys CMK**

purpose of determining coverage and investigating and/or defending any Claim, all without cost to the company other than expense reimbursement provided under Section Supplementary Payments. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or appointment which the Insured may have.

During the course of the Coverage DJ, Plaintiffs agreed that Evanston would conduct the examination under oath ("EUO") of Mr. Arzadi. In fact, based on Plaintiffs' agreement, the Court in the Coverage DJ at one point directed the parties to conduct Mr. Arzadi's EUO on or before June 6, 2018. Evanston relied on the Plaintiffs' agreement during this period and did not proceed with noticing Mr. Arzadi's deposition in the Coverage DJ during that time.

Despite Plaintiffs' prior agreement and the Court's directive, Plaintiffs, on May 22, 2018, subsequently filed a Motion for a Protective Order in the Coverage DJ to, among other things, prevent the EUO. The Court conducted numerous conferences with the parties regarding Plaintiffs' motion and, in an effort to avoid expenditure of fees to litigate the motion, ultimately requested that Plaintiffs agree that Mr. Arzadi submit to the EUO in any form. On June 1, 2018, Plaintiffs agreed that Mr. Arzadi would submit to the EUO, but on certain conditions – namely, after his deposition in the Allstate Suit was completed and under a protective order to be entered into in the Coverage DJ.

Subsequently, the parties participated in another conference with the Court, wherein the Court requested that the parties consider a proposal to expedite the taking of Mr. Arzadi's EUO. Namely, the Court directed the parties to consider agreeing to conduct Mr. Arzadi's EUO if his deposition in the Allstate Suit did not occur within six months. While the parties were considering this last proposal, the Court in the Coverage DJ, on June 11, 2018, administratively terminated that suit without prejudice to the right of the parties to reopen the matter pending the disposition of the Allstate Suit, and also terminated without prejudice Plaintiffs' Motion for a Protective Order.

The Policy provides that, in addition to submitting to the EUO at Evanston's request, the Insured(s) must "give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim." Thus, the Insured is obligated to not only submit to a EUO, but also to assist and cooperate with Evanston and provide statements to Evanston while Evanston is defending any Claim. While Evanston may consider Plaintiffs' pending proposal to conduct Mr. Arzadi's EUO after his deposition takes place in the Allstate Suit, the Insured(s) failure to cooperate and submit to the EUO at Evanston's request, or its offer to conduct the EUO under certain conditions, is nonetheless a clear breach of the Policy terms and the Insured's duty to assist and cooperate with Evanston.

As such, Evanston reserves its rights accordingly, including the right to disclaim coverage for the Allstate Suit or cease defending the Plaintiffs in the Allstate Suit for failure to assist and cooperate with Evanston under the terms of the Policy. Evanston also reserves the right to seek to reopen the Coverage DJ for purposes of securing the Insured's cooperation, including but not limited to in regards with submitting Mr. Arzadi for his EUO.

Philip Nettl, Esq.                                                    **Kennedys CMK**

### G.  RESCISSION

The outset of the Policy provides that the Company and the Insured agree to the Policy terms in consideration of and reliance upon, among other things, "the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured." Evanston continues to reserve its rights to rescind the Policy based on any material misrepresentations set forth in applications leading to the issuance of the Policy and/or the underwriting information submitted on behalf of the Insured.

### H.  DEFENSE COUNSEL ASSIGNMENT

The Policy states that Evanston shall have the right and duty to defend and investigate any Claim to which coverage under the Policy applies, and that Evanston shall select defense counsel. The Policy further provides that "if the law of the state of the Insured's domicile (as stated in Item 2. of the Declarations) allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company."

Evanston will defend the Arzadi Defendants under the Policy in the Allstate Suit to the extent required under applicable New Jersey law, and subject to the Policy terms and limitations outlined above, including a complete reservation of all of Evanston's rights under the Policy and at law. Please note that the Policy provides that Claim Expenses shall reduce the Limits of Liability available under the Policy and shall be applied against the Deductible. Additionally, because Evanston is only obligated to defend against covered claims under applicable law, Evanston reserves its rights to be reimbursed for defense costs associated with non-covered claims. Further, the retention of counsel to defend the Arzadi Defendants is also subject to compliance with Evanston's file handling and billing guidelines.

Plaintiffs have advised Evanston that a total of four attorneys from the law offices of Benedict and Altman and the Law Office of Gerard Vince have been handling the defense of the Arzadi Defendants in the Allstate Suit. Evanston is currently reviewing the billing records for those law offices for compliance with its file handling and billing guidelines, reasonableness and reimbursement purposes to the Arzadi Defendants. Evanston will advise of its position on those submissions shortly. The Arzadi Defendants have not submitted to Evanston a request that this defense counsel assignment remain in place moving forward.

Regardless, although Evanston does not admit or deny that a conflict of interest has arisen between the Insureds and Evanston, Evanston, under the Policy terms, hereby provides a list of attorneys and law firms from which the Insureds may designate defense counsel:

1) Cathleen Kelly Rebar, Esq. of Rebar Bernstiel;

2) John B. Mullahy, Esq. of Kaufman Borgeest & Ryan LLP;

3) Marc L. Bogutz, Esq. of Wilson Elser Modkowitz Edelman & Dicker LLP; or

4) Timothy Jabbour, Esq. of Tressler LLP.

Philip Nettl, Esq.                                                                            **Kennedys CMK**

Since Evanston is reserving its rights to disclaim coverage, please be advised that the Insureds have the right to accept Evanston's defense offering under this Reservation of Rights, as well as a right to reject the defense offered, as it is being provided under this Reservation of Rights. If the Insureds reject the offer of a defense under this Reservation of Rights, the Insureds will be responsible for retaining their own independent counsel to defend them in the Allstate Suit, subject to Evanston's approval, who shall cooperate with Evanston under the Policy terms, and Evanston will reimburse the Insureds only for reasonable defense costs and fees incurred and activities performed in compliance with Evanston's file handling and billing guidelines.

Please advise within fourteen business days whether the defense offering under this Reservation of Rights is being accepted or rejected by the Insureds. If the defense offer is being accepted, please indicate which of the above-listed attorneys and respective law firms the Insureds are selecting to designate as defense counsel.

### IV. CONCLUSION

In light of the foregoing, Evanston will defend the Plaintiffs in the Allstate Suit subject to the limitations as outlined above, including a complete reservation of all of Evanston's rights and the right to ultimately disclaim coverage for the Allstate Suit.

Evanston's actions in investigating, evaluating, monitoring and/or defending this Claim should not be construed as constituting a waiver or other relinquishment of Evanston's right to deny coverage at a later date, nor as an admission of any obligation under the Policy. Evanston further acknowledges that any Insured under the Policy likewise retains all rights. The Insured(s) are not being asked to waive or relinquish any rights under the Policy or under the law.

The foregoing statement of Evanston's position is based upon information that has been provided to Evanston to date. If you have additional information regarding this Claim, please forward it to my attention for consideration. This correspondence is not intended to be, nor shall it be construed as, a waiver of any right or basis that Evanston may have to disclaim coverage, and Evanston expressly reserves all rights in this regard. Neither this correspondence nor any subsequent communication should be deemed or construed as an admission of coverage under the Policy, or as a waiver of any right or defense to coverage available under that policy, or at law or in equity. Evanston may supplement the foregoing correspondence to include any additional potential basis for reservation or denial that may be subsequently identified.

Should you have any questions concerning this correspondence or should you wish to discuss it further, please do not hesitate to contact me.

Very truly yours,

Christina R. Salem

cc: Michael J. Tricarico

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $ 3.45    File 899955-170-10
Extra Services & Fees (check box, add fee as appropriate)    CS 7/9/18
☑ Return Receipt (hardcopy) $ 2.75
☐ Return Receipt (electronic) $ _____    Postmark
☐ Certified Mail Restricted Delivery $ _____    Here
☐ Adult Signature Required $ _____
☐ Adult Signature Restricted Delivery $ _____
Postage $ 1.42
Total Postage and Fees $ 7.62

Sent To Philip Nettl, Esq.
Street and Apt. No., or PO Box No. Benedict and Altman
247 Livingston Avenue
City, State, ZIP+4® New Brunswick, NJ 08901

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7015 3430 0000 5019 6332

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Philip Nettl, Esq.
   Benedict and Altman
   247 Livingston Avenue
   New Brunswick, NJ 08901

   9590 9403 0934 5223 8735 80

2. Article Number (Transfer from service label)

   7015 3430 0000 5019 6332

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent
                              ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt